**In the Matter of the Adoption of a Minor Female Child, J.B.S.,**

**Alfred K. Weidenhammer,**
**Appellant–Petitioner,**

v.

**Jacqueline L. Sorensen, Appellee.**

No. 79A04–0508–CV–486.

Court of Appeals of Indiana.

March 17, 2006.

Marcel Katz, Law Offices of Marcel Katz, Lafayette, for Appellant.

Steven P. Meyer, Cheryl M. Knodle, Ball Eggleston PC, Lafayette, for Appellee.

## OPINION

KIRSCH, Chief Judge.

Alfred K. Weidenhammer appeals the trial court's order that set aside the adoption of his step-granddaughter, J.B.S. On appeal, he raises numerous issues, of which we find one dispositive: whether J.B.S.'s maternal aunt, Jacqueline Sorensen, possessed standing to file a Verified Motion to Set Aside Adoption Order.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

In 1970, Weidenhammer married a woman named Jo Anne, who was the mother of three small children, including Sorensen and Margaret Strucker. Together, the couple raised Jo Anne's children. On February 19, 1994, J.B.S. was born out of wedlock to Strucker. J.B.S.'s paternity was never established. Soon after J.B.S.'s birth, Strucker was convicted of illegal activities and jailed. Due to Strucker's absence, Jo Anne and Weidenhammer took J.B.S. into their home, and, in February 1995, they were appointed J.B.S.'s legal guardians to care for her during Strucker's extended absence.[1]

After Jo Anne passed away in December 2003, Sorensen petitioned the court to become a successor guardian for J.B.S. The court denied Sorensen's petition—retaining Weidenhammer as guardian—but provided that she could visit J.B.S. two Thursdays and one Sunday a month. *Appellee's App.* at 8.

On August 24, 2004, Weidenhammer filed a verified petition to adopt J.B.S. A home study was completed in connection with the adoption and the resultant Adoption Report to Court ("Adoption Report"), which was filed with the trial court on October 21, 2004, recommended "that the Petition to adopt be granted." *Id.*

The trial court conducted a hearing on the petition, on November 22, 2004.[2] During the hearing, the court confirmed that the adoption would effectively do away with Sorensen's visitation. *Id.* at 16. When questioned, Weidenhammer stated that Sorensen had not visited with J.B.S. since the summer of 2004—a statement the court later found to be false. *Id.* at 16, 26. Weidenhammer also testified that he had informed Sorensen of the pending petition for adoption. The trial court did not

---

1. While the record before us does not contain specific dates, testimony reveals that sometime prior to November 2004 Margaret was released from prison but failed to seek custody of J.B.S. In November 2004, Margaret was again incarcerated for attempted murder. *Appellant's App.* at 16.

2. Although the hearing was not recorded, the trial court granted Weidenhammer's subsequent request to make a Certified Statement of Evidence presented at the hearing and the Adoption Report part of the record before us.

discuss or review the contents of the Adoption Report during the hearing.

After the hearing, the trial court took the matter under advisement, and, on December 17, 2004, the trial court entered a Decree of Adoption terminating Strucker's parental rights and approving and granting Weidenhammer's petition to adopt J.B.S. To reflect the correct spelling of J.B.S.'s name, the trial court entered an Amended Decree of Adoption on January 19, 2005.

On February 18, 2005, Sorensen filed a Verified Motion to Set Aside Adoption Order. The trial court held a hearing on the issue and took the matter under advisement. In its June 2, 2005 ruling, the trial court found that Weidenhammer falsely testified that Sorensen had abandoned her visitation rights. As such, the trial court concluded that the adoption would not have been granted had Weidenhammer's been truthful in his testimony. The trial court set aside the Decree of Adoption on the basis that it had been procured through fraud. Weidenhammer now appeals.

## DISCUSSION AND DECISION

■ On review, we will not disturb a trial court's ruling in adoption proceedings unless the evidence would lead to but one conclusion, and the trial court reached the opposite conclusion. *In re Adoption of K.S.P.*, 804 N.E.2d 1253, 1255 (Ind.Ct.App. 2004). We owe no deference, however, to a trial court's legal conclusions. *Id.*

■ Initially, the right of adoption was unknown at common law. *In re Adoption of M.M.G.C.*, 785 N.E.2d 267, 270 (Ind.Ct. App.2003). Our General Assembly subsequently enacted statutes permitting adoptions by married couples, stepparents, and single adults. *Id.* With respect to these statutes, we have noted that the primary concern in every adoption proceeding is the best interest of the child. *Id.; B.G. v.*

*H.S.*, 509 N.E.2d 214, 217 (Ind.Ct.App. 1987). The State has a strong interest in providing stable homes for children. *In re Adoption of M.M.G.C.*, 785 N.E.2d at 270; *B.G.*, 509 N.E.2d at 217. To this end, early, permanent placement of children with adoptive families furthers the interests of both the child and the State. *In re Adoption of M.M.G.C.*, 785 N.E.2d at 270; *B.G.*, 509 N.E.2d at 217. An adoption enables a child to be raised in a stable, supportive, and nurturing environment and precludes the possibility of state wardship. *In re Adoption of M.M.G.C.*, 785 N.E.2d at 270. An adoption also legally entitles the child to her parent's health and disability insurance, education, housing, inheritance, and social security benefits. *Id.*

IC 31–19 (hereinafter the "Adoption Code") provides the statutory framework for the adoption of a child. *In re Adoption of Infant Child Baxter*, 799 N.E.2d 1057, 1060 (Ind.2003). For a child born out of wedlock and for whom paternity has not been established, the Adoption Code requires the written consent of the biological mother and "each person, agency, or county office of family and children having lawful custody of the child whose adoption is being sought." IC 31–19–9–1(a). The Adoption Code further provides that consent is not required from a parent "if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption." IC 31–19–9–8(a)(1). Here, in order to grant the adoption, the trial court needed Strucker's consent or proof of her abandonment; consent from the Tippecanoe County Office of Family and Children, the agency through which the guardianship was being overseen; and consent from Weidenhammer, J.B.S.'s legal guardian.

In the Amended Decree of Adoption, the trial court noted that the requisite consent had been obtained as follows:

[T]he report of investigation and [positive] recommendation of Paralegal On Call [prepared for the Child Welfare Supervisor of the Tippecanoe County Office of Family and Children] having hereto been filed with the Court, which report is on file with the Court.

. . . .

And the Court further finds that said child has been wholly abandoned and deserted for more than a six (6) month period prior to the date of the filing of said petition for adoption by said child's natural parent, and notice of said adoption proceeding was perfected on the natural parent by summons, whereby said Margaret Belle Strucker was to appear in said Court on or before October 1, 2004, and said parent did not appear to approve or contest this adoption proceeding, and in light of the above facts, the parental rights of the natural mother, Margaret Belle Strucker is hereby terminated.

And that the petitioner [Weidenhammer] now appears in open court and consents to the adoption of said child; that said petition is of sufficient ability to rear said child and furnish suitable support and education for said child; and that it is in the best interest of said child that the relief for which the petition for adoption prays should be granted . . . .

*Appellant's App.* at 13. Accordingly, the court recognized the necessary consent of all required parties.[3]

■ Sorensen claims that the adoption should be set aside because Weidenhammer lied to the tribunal by saying she had abandoned visitation with J.B.S. Effectively, she argues that, had she been present at the adoption hearing, she would not have consented to the adoption. However, contrary to Sorensen's assertions, she was not a party in interest to this adoption. While she had been granted the privilege to visit J.B.S. under the previous guardianship, Sorensen had no standing to participate in the adoption proceedings, and certainly no standing to object to those proceedings once final.[4]

■ Standing refers to the question of whether a party has an actual demonstrable injury for purposes of a lawsuit. *In Re Visitation of J.D.G.*, 756 N.E.2d 509, 511 (Ind.Ct.App.2001). The main purpose of standing is to insure that the party before the court has a substantive right to enforce the claim that is being made. *Id.* Unlike a grandparent who, under certain circumstances, can obtain standing to petition the court for visitation of a grandchild, *In re the Visitation of J.P.H.*, 709 N.E.2d 44, 46 (Ind.Ct.App.1999), a maternal aunt has no comparable standing.

■ Here, the trial court set aside the adoption on the basis of fraud. "Caselaw has indicated that fraud may be a reason for setting aside an adoption . . . ." *Adoptive Parents of M.L.V. v. Wilkens*, 598 N.E.2d 1054, 1057 (Ind.1992) (citing cases where consent for adoption required). These cases, however, deal with a person whose consent was required for the adoption. *Id.* Sorensen is not a member of this class. Therefore, Sorensen cannot obtain a reversal of the adoption based upon

---

3. In its order to set aside the adoption, the trial court found that Sorensen was not given notice of the filing or of a hearing on the petition for adoption, but concluded that she "is not a person entitled to receive notice of the filing of or hearing on the Petition for Adoption." *Appellant's App.* at 25.

4. In her brief, Sorensen argues that she had a constitutional right to notice because she "had a court-approved and court-ordered right of visitation." *Appellee's Br.* at 5. She presents no authority for the claim that the privilege of visitation granted to her ripened into a right and we know of no such authority.

fraud. Sorensen's petition to set aside the adoption therefore should have been denied as a matter of law.

While we must emphasize that our decision today in no way condones the practice of a party failing to provide a court with accurate testimony, we note that, here, the court had sufficient information to ascertain the truth on the issue of Sorensen's relationship and visits with J.B.S.[5]

The Adoption Report filed with the court provided, in pertinent part:

> Alfred feels [J.B.S.] is an all-around good girl who is organized, smart, and a hard worker. During the interview [J.B.S.] was quiet and soft-spoken but she readily answered questions. She became much more animated when she was discussing her desire to no longer have to visit her aunt.
>
> [J.B.S.] states she wants to be adopted by Alfred. She does not like having to visit with her maternal aunt, whom she describes as boring and critical of [J.B.S.]. . . . [J.B.S.] was very outspoken and firm in her statement that she does not want to visit with her aunt. Those visits are currently court-ordered and [J.B.S.] spends 18 hours per months with her aunt. She states she would prefer to not have to visit with her aunt at all.
>
> . . . .
>
> [Alfred] states he and [and his wife] worked hard to raise the children and later their grandchild, [J.B.S.]. Alfred wishes to adopt [J.B.S.] because he has raised her since birth and he wants to protect the relationship they have with each other. Alfred wants to provide stability, safety, and happiness for [J.B.S.] and he states he has taken all the possible steps to give her a good future.
>
> Alfred is concerned about [J.B.S.]'s maternal aunt having visitation rights at this time. He states the aunt, Jacque, is constantly critical of [J.B.S.] and does not have a suitable lifestyle for having children around. He states [J.B.S.] does not want to go on visits with her aunt yet he is forced to send her with her aunt. He states Jacque has harassed him since his wife passed away and she has made false allegations against him. Alfred would like to remove the aunt from [J.B.S.]'s life at this time, although he states that in the future he would not prevent [J.B.S.] from seeing her aunt or her mother, if that is what she desires.

*Appellant's App.* at 6–7.

This Adoption Report was filed with the trial court. It sets out that the visitation was ongoing at the time of the adoption hearing, and it sets out the parameters of such visitation and the problems that it caused. Thus, the trial court had before it credible evidence that Sorensen's visitation was ongoing at the time it ordered its decree.

We reverse and remand this case to the trial court to set aside and revoke its June 2, 2005 order setting aside the Decree of Adoption and Amended Decree of Adoption.

Reversed and remanded for proceedings consistent with this opinion.[6]

SULLIVAN, J., and DARDEN, J., concur.

---

5. We also note that there are remedies available whenever a witness gives inaccurate testimony.

6. Because we conclude that the standing issue is dispositive, we do not address the other issues raised by Weidenhammer, namely, whether the trial court abused its discretion

or otherwise committed error in setting aside the Adoption Decree.