Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**MEGAN B. QUIRK**
Public Defender
Muncie, Indiana

ATTORNEY FOR APPELLEE:

**DAVID J. KARNES**
Dennis, Wanger & Abrell, P.C.
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE ADOPTION OF S.H., L.H., AND J.H. | ) ) ) | |
| BENJAMIN HANKINS<br>    Appellant, | ) ) ) | |
| vs. | ) ) | No.    18A02-1212-AD-01020 |
| G. NICK PETERSON<br>ANDREA PETERSON<br>    Appellees. | ) ) ) ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Mary G. Willis, Special Judge
Cause No. 18C01-1205-AD-0018

**August 13, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Benjamin Hankins ("Hankins"), appeals the determination of the Delaware Circuit Court that his consent was not required in adoption proceedings regarding his three children, S.H., L.H. and J.H. The court made its determination pursuant to Indiana Code section 31-19-9-9 after an evidentiary hearing and based upon Hankins's conviction for the murder of his wife, the mother of the children. Hankins argues that there was not clear and convincing evidence to support the effective termination of his parental rights. We disagree and affirm.

**Facts and Procedural History**

On June 3, 2011, Hankins shot his wife, the mother of S.H., L.H., and J.H. ("Mother"), multiple times inside his home, while J.H., then four years old, was waiting outside the home in her mother's vehicle. Mother was later pronounced dead at IU Health Ball Memorial Hospital.

On April 11, 2012, Hankins was convicted of murder by a jury. He was sentenced to sixty-four years executed in the Indiana Department of Correction on June 21, 2012, and received credit time for 385 days spent in jail since June 3, 2011. At best, Hankins can expect to serve thirty-two years of his sentence, which would mean he would be released sometime in 2041.[1] On April 3, 2013, this court affirmed Hankins's conviction for murder of the mother of his children. Hankins v. State, No. 18A02-1207-CR-611 (Ind. Ct. App. Apr. 3, 2013). Hankins then filed a petition to transfer to the Indiana Supreme Court. Our supreme court denied transfer on June 27, 2013.

---

[1] According to the DOC website, his earliest possible release date is in 2043. However, we use 2041 as the earliest possible release date as calculated based on the sentence and incarceration date provided in the record.

After the murder, Gary and Andrea Peterson ("the Petersons"), the children's maternal grandparents, immediately filed for and received temporary guardianship over the children on June 17, 2011. Since that time, the children have resided with the Petersons, and have been doing well emotionally and academically. The Petersons have provided consistency during this difficult time, and have adjusted their lives in order to best care for the children. Mrs. Peterson left her job to care for the children full time, and the children have been enrolled in a nearby Christian school where they are on the A-B honor roll. Even though the children struggle emotionally at times, and understandably so, the Petersons have helped to focus their grieving process on positive thoughts and memories. The Petersons, despite losing their own daughter in the tragedy, avoid speaking ill of Hankins, and allow the children to visit with their paternal grandmother pursuant to a mediated visitation arrangement.

On May 25, 2012, the Petersons filed a petition for adoption requesting that they be allowed to adopt S.H., L.H., and J.H. Hankins filed a motion to contest the adoption proceedings on June 22, 2012. After Hankins was appointed an out-of-county public defender, the trial court set the matter for a contested hearing on October 9, 2012. On October 2, Hankins filed a motion to continue based on the pendency of his direct criminal appeal, which the trial court denied. Hankins then requested a change of venue, the original Delaware Circuit Judge set to hear the case recused herself, and Special Judge Mary G. Willis of the Henry Circuit Court accepted jurisdiction in the case. A contested hearing took place on November 21, 2012 in Henry Circuit Court.

At the hearing, Hankins admitted the fact of his conviction and incarceration for his crime, but testified that his right to consent to the adoption should not be terminated because his appeal was pending, and he anticipated that the verdict would be overturned. He also argued that termination of his rights was not in the children's best interest. Hankins requested that the court continue the children in the guardianship of the Petersons, so that he might regain custody in such event that his conviction was overturned. The only argument Hankins presented through testimony regarding the best interests of the children was that being separated permanently from him, having already lost one parent, would be traumatic for the children.

The Petersons presented evidence from Dr. Thomas Murray ("Dr. Murray"), a practicing clinical psychologist who had met with the children on three separate occasions in order to make a recommendation as to their best interests in the upcoming adoption proceedings. Dr. Murray's professional opinion was based on his meetings with the children and with the children's social worker. Dr. Murray opined that the children's best interests would be served by the Petersons' adoption and termination of the father's right to consent to the adoption. Dr. Murray also testified concerning the children's anger and resentment toward Hankins following Mother's murder, and indicated that the children felt favorably toward the Petersons.

Following testimony by both parties and Dr. Murray, the trial court dispensed with Hankins's consent and issued its decree of adoption on November 21, 2012 for S.H., L.H. and J.H., naming the Petersons as adoptive parents. Hankins now appeals.

4

**Discussion and Decision**

Indiana Code section 31-19-9-9 provides:

A court *shall determine* that consent to adoption *is not required* from a parent if the:

(1) *parent is convicted and incarcerated* at the time of the filing of a petition for adoption for:
(A) *murder* (IC 35-42-1-1); . . .
(2) *victim of the crime is the child's other parent*; and
(3) court determines, after notice to the convicted parent and a hearing, that dispensing with the parent's consent to adoption is in the *child's best interest.*

(emphasis added). It is undisputed that both the first and second elements of this statute were satisfied at trial. Thus, the only element for the court to determine was whether dispensing with Hankins' consent to the adoption was in the children's best interest.

In reviewing a trial court's ruling in an adoption proceeding, this court will not disturb that ruling unless the evidence leads to but one conclusion, and the trial court reached the opposite conclusion. In re Adoption of K.S., 980 N.E.2d 385, 387 (Ind. Ct. App. 2012) (citing In re Adoption of M.A.S., 815 N.E.2d 216, 218 (Ind Ct. App. 2004)). We do not reweigh evidence, and we only consider evidence that is favorable to the trial court's decision together with reasonable inferences that can be drawn therefrom to determine whether the evidence is sufficient to sustain the trial court's ruling. Id. It is the appellant's burden to overcome the presumption that the trial court's ruling is correct. Id.

Hankins's primary contention on appeal in this matter is that the trial court should not have dispensed with his consent while the direct appeal of his convction was pending.

5

Although his criminal appeal has now been denied, and he remains both convicted and incarcerated, we review his new appeal as a challenge to the sufficiency of the evidence that adoption is in the best interest of the children. Hankins contends that the adoption proceedings ought to be halted until all appeals are exhausted, which plainly contradicts Indiana law. However, the law is clear that "the court may hear and grant a petition for adoption even if an appeal of a decision regarding the termination of the parent-child relationship is pending." Ind. Code § 32-19-11-6.

Hankins's additional argument, that the trial court should preserve his parental rights despite his incarceration for the murder of his children's mother defies belief. "[E]arly, permanent placement of children with adopted families furthers the interests of both the child and state." In re Adoption of J.B.S., 843 N.E.2d 975, 977 (Ind. Ct. App. 2006). In cases like Hankins's, early, permanent placement is particularly important. Hankins faces a sixty-four year sentence, and to stay adoption proceedings until "all appeals," are exhausted, a concept that would include post-conviction relief and *habeas corpus* proceedings, would place the children in custodial limbo for years, and perhaps into their adult lives.

"Because the ultimate purpose of the law is to protect the child, the parent-child relationship will give way when it is no longer in the child's interest to maintain this relationship." A.F. v. Marion Cnty. Office of Family and Children, 762 N.E.2d 1244, 1249 (Ind. Ct. App. 2002). Dr. Murray's testimony indicated that adoption was in the best interest of the children. Hankins presented no substantive evidence as to the best interests of the children, but rather argued only that if his conviction were reversed, and

6

the adoption took place without his consent, he would have no recourse by which to re-establish a relationship with his children.  Hankins's testimony that his separation from his children would be particularly traumatic to them because they had already suffered the loss of their mother is both selfish and incredible, and it fails to take into account the fact that Hankins is responsible for the children's loss of their mother, and that his separation from the children is due to his incarceration for the Mother's murder.

For all of these reasons, the trial court's determination that Hankins's consent to the adoption of his children is unnecessary is supported by clear and convincing evidence, and adoption by the children's maternal grandparents is in their best interest.

Affirmed.

NAJAM, J., and BROWN, J., concur.