## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 14 2017, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Eric D. Orr
Eric D. Orr, Attorney
Berne, Indiana

ATTORNEY FOR APPELLEE

Joseph M. Johnson, II
Joseph M. Johnson, P.C.
Decatur, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE: The Adoption of
N.D.K., and A.A.K.,

D.R.K.,

*Appellant-Respondent,*

v.

A.S.K.,

*Appellee-Petitioner.*

July 14, 2017

Court of Appeals Case No.
01A02-1612-AD-2788

Appeal from the Adams Circuit
Court

The Honorable Chad E. Kukelhan,
Judge

Trial Court Cause No.
01C01-1604-AD-5

**Barnes, Judge.**

## Case Summary

D.R.K. ("Birth Mother") appeals the trial court's order granting the petition of A.S.K. ("Adoptive Mother") to adopt Birth Mother's children, N.D.K. and A.A.K. We affirm.

## Issues

The issues before us are:

I.  whether the trial court properly admitted neuropsychological records regarding A.A.K. into evidence; and

II.  whether there is sufficient evidence to support the trial court's conclusion that Birth Mother's consent to the adoption was unnecessary.

## Facts

N.D.K. was born in 2000 and A.A.K. was born in 2003. Birth Mother was married to J.N.K. ("Father") when they were born. Birth Mother and Father subsequently divorced. Father began living with Adoptive Mother in 2007, and they married in 2014. Adoptive Mother has no criminal history, and both she and Father have a steady employment and residential history.

Shortly after Birth Mother and Father's divorce, in January 2008, the children were found to be children in need of services. On February 9, 2009, Father was granted custody of the children after he and Birth Mother stipulated to it and the local office of the Department of Child Services consented to it. The order

from that date relates in part, "[Birth Mother] consents to the grant of custody and believes it is in the best interests of the minor children that [Father] be granted sole legal and physical custody of the minor children." Appellant's App. Vol. II p. 50. The order also stated, "[Birth Mother] is entitled to supervised parenting time only as agreed by the parties or at a minimum one time per week as supervised by an independent agency paid for by [Birth Mother]." *Id.* at 49. As to child support, the order stated that Birth Mother was "required" to pay it but did not set a dollar amount. *Id.*

[5] Between the date of this order and December 2012, Mother exercised no visitation with the children at all, nor did she ever ask for any visitation. Birth Mother was incarcerated from May to July 2009 after her participation in a drug court program was revoked. In November 2010, she was arrested and jailed on a charge of Class C felony forgery and was eventually convicted of that offense. She was released from prison in November 2011.

[6] In August 2012, Birth Mother wrote a letter to the trial court, asking it "to step in to help grant me visitation rights with my 2 oldest [N.D.K. and A.A.K.]." *Id.* at 51. The February 2009 order regarding visitation was still in effect at that time. Regardless, the trial court held a hearing on the matter. It issued the following order on November 30, 2012:

> Parties appear for hearing on visitation issues. By agreement of parties the Court orders that the Respondent/Mother shall have supervised visitation with the children through SCAN in Allen County, IN, and to the extent affordable that counseling involving the children and the mother occur.

> The parties shall cooperate with one another in communicating
> and working out a schedule in accordance with dates available
> on SCAN's calendar for the visitations.

*Id.* at 53.

[7]   Between December 14, 2012 and April 5, 2013, Birth Mother had approximately sixteen one-hour supervised visits with the children. The visitations stopped because Birth Mother had admitted violating probation for her forgery conviction by taking methadone. She was ordered to serve three years of her previously-suspended sentence, which resulted in Birth Mother being incarcerated until March 2015. On April 15, 2015, Birth Mother was convicted of driving while suspended and received a 180-day suspended sentence. On June 30, 2015, Birth Mother admitted to violating her probation by using morphine and methamphetamine, and she was ordered to serve her suspended sentence. Also, on June 28, 2015, Mother was convicted of theft.

[8]   On December 5, 2015, Birth Mother was released from jail on her most recent sentences. Afterwards, Birth Mother began communicating surreptitiously with A.A.K. by text and email. These communications led to two or three overnight visits with Birth Mother and A.A.K. at the house of one of A.A.K's friends between December 2015 and February 2016. Father was unaware of these communications and visits until N.D.K. saw a message on A.A.K.'s tablet and reported it to Father. A.A.K.'s behavior changed during this three-month period for the worse; such behavior included lying, stealing, lashing out, and inappropriate internet chatting with men. Father and Adoptive Mother barred

A.A.K. from visiting her friend after learning about her secret visits with Birth Mother.

[9] On February 19, 2016, another probation violation petition was filed against Birth Mother for using methadone, to which Birth Mother admitted. She then was placed on home detention, and on April 19, 2016, she was alleged to have violated the terms of that placement by using methadone and amphetamines. Birth Mother admitted to those violations and then was put into another drug court program.

[10] On April 6, 2016, Adoptive Mother filed a petition to adopt N.D.K. and A.A.K., with Father's consent. The petition alleged Birth Mother's consent was not required because she had abandoned the children or otherwise met statutory requirements for her consent being unnecessary. During the hearing, Birth Mother acknowledged that her visitation with the children had been sparse because she thought it was harmful to them, emotionally, to see her doing better but then learn she had been arrested again and was doing drugs. Birth Mother also claimed she had attempted to give money to Father on a few occasions but that he rebuffed her offers; Father and Adoptive Mother testified that Birth Mother had never offered any financial support for the children. The sole exception to this was Birth Mother sending fifty dollars to N.D.K. for his birthday in 2014; Father returned this money to her because he believed she should have spent it on having supervised visitation with N.D.K. Except for Christmas in 2012 and 2015, Birth Mother never gave any gifts to the children.

[11] With respect to communicating with the children, Birth Mother claimed she "faithfully" wrote letters to them once a month during her periods of incarceration between 2009 and 2012; Father and Adoptive Mother, however, only recalled the children receiving letters once or twice a year, at most. Tr. p. 81. Since 2014, Birth Mother sent at most two letters to the children. N.D.K. also testified in favor of the adoption, stating that he was "use to the hurt [caused by Birth Mother]. Just let it go." *Id.* at 76. During the hearing, Father presented evidence of A.A.K.'s emotional/behavioral difficulties and learning disabilities. As part of this evidence, the trial court permitted Father to introduce, over Birth Mother's objection, two reports prepared by a neuropsychologist who examined A.A.K. in 2009 and again in 2016. The neuropsychologist did not testify.

[12] On November 9, 2016, the trial court entered an order granting Adoptive Mother's adoption petition. The order, which included findings of fact and conclusions thereon at Birth Mother's request, found that Birth Mother's consent to the adoption was not necessary. Birth Mother now appeals.

## Analysis

### *I. Introduction of Neuropsychological Reports*

[13] The first issue we address is whether the trial court erred in allowing Father to introduce the neuropsychological reports concerning A.A.K. into evidence. Rulings on the admissibility of evidence fall within the sound discretion of our trial courts. *State Farm Mut. Ins. Co. v. Earl*, 33 N.E.3d 337, 340 (Ind. 2015). An

abuse of discretion occurs if a trial court's ruling is clearly against the logic and effect of the facts and circumstances before it or if the trial court erred on a matter of law. *Santelli v. Rahmatullah*, 993 N.E.2d 167, 175 (Ind. 2013). Even if evidence is improperly admitted, we will not reverse a judgment unless that error was clearly prejudicial. *Id.* As Indiana Appellate Rule 66(A) states:

> No error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.

[14]    Birth Mother contends the reports were inadmissible hearsay. We find it unnecessary to address the merits of that claim, as any error in the introduction of the reports would have been harmless. The best indicator of harmlessness here is that the trial court nowhere mentions the reports in its thirty-three-page order granting the adoption. The order contains detailed findings and conclusions, per Birth Mother's request. Thus, it is apparent that the trial court placed little to no weight upon the reports. Moreover, the question of A.A.K.'s mental and emotional health is secondary to the central issue in this case: whether Birth Mother's actions (or lack thereof) negated the necessity of obtaining her consent to the adoption. There is considerable evidence on that point, entirely aside from anything contained in the reports. Birth Mother cannot claim reversible error based on the introduction of the reports.

## II. Necessity of Birth Mother's Consent

[15] Next, we address whether the trial court correctly found that Birth Mother's consent to the adoption was unnecessary. When reviewing a trial court's decision in an adoption case, we will not reweigh the evidence or judge witness credibility. *In re Adoption of S.W.*, 979 N.E.2d 633, 639 (Ind. Ct. App. 2012). We will consider only the evidence most favorable to the trial court's decision and the reasonable inferences therefrom in determining whether there is sufficient evidence to sustain the decision. *Id.* We will not disturb the trial court's decision unless the evidence leads to only one conclusion and the trial court reached an opposite conclusion. *Id.*

[16] Additionally, the trial court entered findings of fact and conclusions thereon at Birth Mother's request pursuant to Indiana Trial Rule 52(A). Thus, we must determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "We will not set aside the findings or the judgment unless they are clearly erroneous." *Id.* Findings are clearly erroneously only if the record lacks any evidence or reasonable inferences therefrom to support them, and a judgment is clearly erroneous only if it is unsupported by the findings and the conclusions relying on those findings. *Id.*

[17] A biological parent's consent to his or her child's adoption normally is required under Indiana Code Section 31-19-9-1. However, there are a number of situations in which a trial court may find that a biological parent's consent is not needed. Adoptive Mother's petition alleged, and the trial court's order

found, that Birth Mother's consent was not required under the following statutory provisions defining persons who consent to adoption is not required:

> (1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or

>> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

> * * * * *

> (11) A parent if:

>> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and

>> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

Ind. Code § 31-19-9-8(a). An adoption petitioner has the burden of proving by clear and convincing evidence that a biological parent's consent to the adoption was not required. *In re Adoption of M.L.*, 973 N.E.2d 1216, 1222 (Ind. Ct. App.

2012). Proof on any one of the statutory grounds for dispensing with consent is sufficient to support the granting of an adoption petition. *Id.*

[18] We conclude there are sufficient findings and evidence to support the conclusion that Birth Mother was unfit and that adoption was in the best interests of N.D.K. and A.A.K.; we need not address the other possible reasons for dispensing with Birth Mother's consent. The factors courts should consider when deciding whether a parent is unfit in an adoption case are essentially identical to those considered in a termination of parental rights case. *Id.* at 1223. Those factors include a parent's substance abuse, mental health, willingness to follow recommended treatment, lack of insight, instability in housing and employment, and ability to care for a child's special needs. *Id.* Other relevant factors bearing on fitness include a parent's criminal history and failure to provide support. *S.L. v. Indiana Dep't of Child Servs.*, 997 N.E.2d 1114, 1123 (Ind. Ct. App. 2013).

[19] Here, Birth Mother has been in and out of prison or jail for the last ten years, while N.D.K. and A.A.K. have been living a stable life with Father and Adoptive Mother for most of that time. Birth Mother's serious criminal history began in 2002 and now includes four felony convictions and five misdemeanor convictions, as well as numerous revocations of probation. Many of her offenses and probation revocations have been directly related to her illegal drug usage. Despite repeated opportunities to address that problem, it has not been solved, or never has been solved for any substantial period of time. In that same time period, Birth Mother only visited with the children regularly between

December 14, 2012 and April 5, 2013. Her attempts to visit with A.A.K. in late 2015 and early 2016 were in violation of the supervised visitation order; Birth Mother had agreed to supervised visitation in both 2009 and 2012 and never moved to change that arrangement. Birth Mother's communication with the children outside of visitation was sporadic at best. She never provided any financial support for their care, even when she was not incarcerated and was employed or when she was on work release. All in all, there is clear and convincing evidence that, unfortunately, Birth Mother is unfit, in light of her criminal history, substance abuse, lack of visitation and communication with the children, and failure to provide any support.

[20] We now address whether dispensing with Birth Mother's consent to the adoption is in the children's best interests. The best interests of the child or children is the primary concern in every adoption proceeding. *M.L.*, 973 N.E.2d at 1224. The permanent placement of children in stable homes serves the interests of both the children and the State. *In re Adoption of J.B.S.*, 843 N.E.2d 975, 977 (Ind. Ct. App. 2006). "An adoption enables a child to be raised in a stable, supportive, and nurturing environment and precludes the possibility of state wardship." *Id.* It also allows the child to access the adoptive parent's insurance, housing, inheritance, and governmental benefits. *Id.*

[21] Birth Mother conceded during the adoption hearing that her repeated drug relapses and numerous forays in and out of the criminal justice system have placed a great emotional strain on the children. By contrast, the evidence indicates that Adoptive Mother has been a stable, nurturing, and supportive

presence in the lives of the children for nearly a decade now. N.D.K., who was sixteen at the time of the hearing, testified unequivocally in support of the adoption as being in his and A.A.K's best interests. He also discussed the negative impact of Birth Mother's drug use and criminal behavior on he and A.A.K. There also was evidence of a dramatic increase in negative behavior by A.A.K. during the period in late 2015 and 2016 when she was secretly communicating and visiting with Birth Mother. A.A.K. has special emotional and educational needs that clearly can be best addressed in a stable environment such as that provided by Adoptive Mother and Father. In sum, there is clear and convincing evidence that it is in the best interests of the children to allow their adoption by Adoptive Mother to go forward without obtaining Birth Mother's consent. This, in conjunction with the evidence and findings that Birth Mother is unfit, dispenses with the necessity of obtaining her consent to the adoption.

## Conclusion

[22] Any possible error in the introduction of the neuropsychological reports for A.A.K. was harmless. The evidence and findings clearly and convincingly support the conclusion that Birth Mother is unfit and that the children's adoption by Adoptive Mother is in their best interests. We affirm the granting of the adoption petition without Birth Mother's consent.

[23] Affirmed.

Baker, J., and Crone, J., concur.