ATTORNEYS FOR APPELLANT
James R. Fisher
Debra H. Miller
Miller & Fisher LLC
Indianapolis, Indiana

Roger L. Pardieck
Karen M. Davis
Susan Boatright
The Pardieck Law Firm
Seymour, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS ASSOCIATION
William E. Winingham
John G. Shubat
Wilson Kehoe Winingham LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Danford R. Due
Scott E. Andres
Due Doyle Fanning LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
DEFENSE TRIAL COUNSEL OF INDIANA
Julia B. Gelinas
Lucy R. Dollens
Frost Brown Todd LLC
Indianapolis, Indiana

Donald B. Kite, Sr.
Gonzalez Saggio & Harlan LLP
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 49S04-1212-CT-667

MARY ELIZABETH SANTELLI, AS
ADMINISTRATOR OF THE ESTATE OF
JAMES F. SANTELLI,

*Appellant (Plaintiff below),*

v.

ABU M. RAHMATULLAH, INDIVIDUALLY
AND d/b/a SUPER 8 MOTEL,

*Appellee (Defendant below).*

Appeal from the Marion Superior Court No. 4, No. 49D04-0704-CT-014720
The Honorable Cynthia J. Ayers, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A04-1011-CT-704

**August 28, 2013**

**Rucker, Justice.**

In this negligence case we address the application of Indiana's Comparative Fault Act to the issue of fault allocation in a specific context: that in which a premises owner has a duty to protect a business invitee from the foreseeable criminal act of a third party.

**Facts and Procedural History**

On October 16, 2005, plaintiff James Santelli was robbed and murdered inside his room in an Indianapolis-area motel owned by defendant, Abu Rahmatullah. Santelli was a resident of Illinois and had rented a room at the motel while he worked on a local construction project. In criminal proceedings the murderer, Joseph Pryor, pleaded guilty to the murder and Class B felony robbery of Santelli and was sentenced to 85 years in the Department of Correction. See Pl's Ex. 90; Pryor v. State, No. 49A02-0709-CR-804, slip op. at 2-3, 2008 WL 1758752, at *1 (Ind. Ct. App. April 18, 2008). On April 5, 2007, Santelli's estate ("the Estate") filed a complaint against Rahmatullah in Marion Superior Court alleging Rahmatullah breached his duty to Santelli to maintain the motel in a reasonably safe manner, causing Santelli's death. Rahmatullah asserted a defense naming Pryor as a liable non-party, and also alleging Santelli was partially responsible for his own death. The case proceeded to a five-day jury trial in July 2010.

The evidence adduced at trial showed that Rahmatullah's motel was located in a high crime area and had been the scene of four armed robberies in less than four years prior to the murder, two of which occurred within six months of Santelli's death in 2005. See Tr. at 206-09. Prostitution and drugs were prevalent at the motel to a degree that undercover police considered renting a room there. See Tr. at 414. About a month before the murder, Rahmatullah hired Pryor as a maintenance man and gave him a master keycard to the motel without inquiring into his criminal history. At the time Rahmatullah hired him, Pryor was a convicted felon, was on probation, and was the subject of an outstanding warrant for violating that probation. Pryor walked off the job after two days of work and Rahmatullah neither confiscated nor deactivated Pryor's working keycard, which remained in Pryor's possession at the time of the murder. See Tr. at 450, 451, 485-86. Although there were no signs of forced entry to Santelli's room, there was also no evidence Pryor used the keycard to gain entry. Santelli had stayed at the same motel in prior years while working on other jobs. Police and expert testimony indicated security

2

procedures at the motel were lax. The motel's only security cameras were in the lobby and the pool area and these were not monitored. Tr. at 303-04. Rahmatullah failed to keep exterior doors consistently closed and locks in working order. Tr. at 457, 484, 499-501, 510.

After the parties rested, the Estate tendered the following final jury instruction, which the trial court denied:

> If you find that the Defendant or his employees should have reasonably foreseen the criminal conduct on the premises could result in the death of a guest, then you are to find that the Defendant is at fault for Pryor's actions as well as for the Defendant's own negligence . . . .

Tr. at 707. Among other things, the trial court instructed the jury on negligence, incurred risk, proximate cause, non-party fault, reasonable foreseeability, a landowner's duty to invitees, and apportionment of fault.[1]

On July 16, 2010 the jury returned a verdict finding total damages in the amount of $2,070,000.00 and apportioning the fault for Santelli's death as follows: 1% to Santelli, 2% to Rahmatullah, and 97% to Pryor, resulting in an award to the Estate of $41,400.00. App. at 184-85. The trial court entered judgment on July 26, 2010. On August 25, 2010 the Estate filed its Motion to Correct Errors and for New Trial, which Rahmatullah opposed. The trial court held a hearing on the motion on September 27, 2010, during which the court directed the parties to

---

[1] More specifically, in part the trial court instructed the jury in the following order that: (1) this case is governed by the Indiana law of comparative fault; (2) the type of fault at issue in this case is negligence, which is the failure to use reasonable care; (3) a plaintiff incurs risk of injury where "he or she actually knew of a specific danger, understood the risk involved and voluntarily exposed himself or herself to that danger"; (4) "[a]n act or omission is a proximate cause of a death if the death is a natural and probable consequence of the act or omission"; (5) the defendant must prove his defenses—that Santelli incurred the risk of his death and that Pryor is at fault for Santelli's death—by a preponderance of the evidence; (6) a determination of negligence depends upon whether the injury could have been reasonably expected to result from a person's act or omission; (7) "[a] landowner's duty to business invitees includes a duty to exercise reasonable care and to protect them from the foreseeable dangerous behavior of others on the premises" but a landowner is not required to insure the safety of invitees; (8) Santelli was an invitee on Rahmatullah's property; (9) a property owner is liable for harm to invitees caused by a condition of the property only if the owner "knows of the condition or by the exercise and [sic] reasonable care should discover the condition and should realize that the condition involves an unreasonable risk"; (10) fault, if any, must be apportioned on a percentage basis between Santelli, Rahmatullah, and Pryor and the apportionment must total 100%. Tr. at 788-90, 794.

3

submit proposed findings of fact and conclusions of law no later than October 25, 2010. On November 5, 2010, the trial court issued its findings, conclusions, and judgment granting in part and denying in part the Estate's motion and ordering a new trial limited to the issue of fault allocation.

Both parties filed notices of appeal from the trial court's order. Rahmatullah asserted the November 5 order was untimely and should be treated as deemed denied under Indiana Trial Rule 53.3 while the Estate appealed the trial court's partial denial of its motion, and from any deemed denial of the motion for untimeliness. On Rahmatullah's motion the appeals were consolidated and the parties and their amici briefed the merits. The Court of Appeals presumed the Estate's motion to correct errors was deemed denied by the trial court and then considered the merits of the parties' arguments. The Court determined that Indiana had previously employed the "very duty" doctrine, held that a jury instruction on the doctrine would be proper on retrial because the doctrine had survived the adoption of the Indiana Comparative Fault Act, and adopted the Restatement (Third) of Torts § 14 to implement the doctrine in Indiana. See Santelli v. Rahmatullah, 966 N.E.2d 661 (Ind. Ct. App. 2012). The Court of Appeals also opined on the admissibility of certain evidence on retrial. We previously granted transfer, thereby vacating the opinion of the Court of Appeals. See Appellate Rule 58(A). We now address the status of the trial court's November 5 order and the application of Indiana's Comparative Fault Act to the facts in this case.

## Discussion
### I.
### The Trial Court's November 5, 2010 Order

The Estate's motion to correct error alleged the trial court erred by: (1) permitting the jury to allocate fault to Pryor; (2) rejecting the Estate's tendered instruction which "would have informed the jurors that they could find [Rahmatullah] liable" for Pryor's criminal act if a death caused by crime was reasonably foreseeable; and (3) excluding certain evidence — namely, of a prior criminal-police shootout at the motel and of the criminal histories of other motel employees. See App. at 190. The Estate also contended more generally that "in light of all of the evidence that was admitted, the jury's verdict allocating 1 percent of the fault to James

4

Santelli and only 2 percent of the fault to [Rahmatullah] was against the greater weight of the evidence." Id.

A.     *Timeliness of the Order*

The trial court held a hearing on the Estate's motion to correct error on September 27, 2010.  The trial court entered its findings of fact, conclusions of law, and order forty days later, on November 5, 2010.  Trial Rule 53.3 addresses the time limitations for ruling on motions to correct error and provides in pertinent part:

> (A) Time limitation for ruling on motion to correct error.  In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied.  Any appeal shall be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied.
>
> (B) Exceptions.  The time limitation for ruling on a motion to correct error established under Section (A) of this rule shall not apply where:
>
> * * *
>
>     (2) The parties who have appeared or their counsel stipulate or agree on record that the time limitation for ruling set forth under Section (A) shall not apply; or
>     (3) The time limitation for ruling has been extended by Section (D) of this rule.
>
> * * *
>
> (D) Extension of time for ruling.  The Judge before whom a Motion to Correct Error is pending may extend the time limitation for ruling for a period of no more than thirty (30) days by filing an entry in the cause advising all parties of the extension.  Such entry must be in writing, must be noted in the Chronological Case Summary before the expiration of the initial time period for ruling set forth under Section (A), and must be served on all parties.  Additional extension of time may be granted only upon application to the Supreme Court as set forth in Trial Rule 53.1(D).

Ind. Trial Rule 53.3.  Rahmatullah contends that because the trial court failed to rule on the motion by October 27 — within thirty days of the hearing — it was deemed denied pursuant to

5

Rule 53.3(A). The Estate counters that the order was timely pursuant to Rule 53.3(B)(2) based on the schedule agreed to by the court and the parties.

At the close of the hearing, the trial court directed the parties to provide proposed findings of fact and conclusions of law. The trial court expressed the need for findings and conclusions given the complexity of the issues in this case, and the submission schedule was discussed as follows:

> [Court]: . . . So this is September the 27th. A couple of weeks [to prepare proposed findings and conclusions] do you think? [Rahmatullah's counsel], I know you have a very busy schedule.
>
> [Rahmatullah's counsel]: Yeah, that would be alright.
>
> [Court]: Alright. . . . Let's make it the 20th of October because I have another jury starting tomorrow. I won't have time to look at it this week. I mean, even if I got them I wouldn't be able to do much with it. So that gives you plenty of time and give me some time to review your findings of facts and conclusions once I get them. The 20th is a Wednesday. Is that not a good date for you [Estate's counsel]?
>
> [Estate's counsel]: Your Honor, could that be moved out to the following Monday. We have a jury trial starting on the 17th of October.
>
> [Court]: Okay. . . . The 25th of October?
>
> [Estate's counsel]: Yes, the 25th. That would be appreciated.
>
> [Court]: That's fine with me. Alright. Then the findings of facts and conclusions are due on the 25th and then the order will be out just as soon as I can get to it after that.

Hrg. Tr. at 26. On the record, and with the acquiescence of both parties, the trial court set a specific date for the parties' submissions of twenty-eight days after the hearing and stated its ruling would follow as soon as possible thereafter. This comports with the time limitation exception in Rule 53.3(B)(2) that "[t]he parties who have appeared or their counsel stipulate or agree on record that the time limitation for ruling set forth under Section (A) shall not apply." We thus find the trial court's November 5, 2010 order timely and now proceed to appellate review of that order.

*B.*      *Standard of Review for the Order*

The Estate pursued its motion to correct error on the basis that "[a] modification of the verdict or new trial in this case is warranted under Indiana Trial Rule 59(J)(1), (3), (5) and (7) because the jury's award of $41,400 against the Defendant was insufficient." App. at 190. Trial Rule 59(J) is entitled "Relief granted on motion to correct error" and "allows for the court to correct any error it determines to be 'prejudicial or harmful.'" Wisner v. Laney, 984 N.E.2d 1201, 1204 (Ind. 2012) (quoting Ind. Trial Rule 59(J)).[2] Among other forms of relief the Rule specifically "authorizes trial courts to grant new trials to correct an error in prior proceedings." Walker v. Pullen, 943 N.E.2d 349, 352 (Ind. 2011).

---

[2] The Rule provides in pertinent part:

> The court, if it determines that prejudicial or harmful error has been committed, shall take such action as will cure the error, including without limitation the following with respect to all or some of the parties and all or some of the errors:
>
> (1) Grant a new trial; . . .
>
> (3) Alter, amend, modify or correct judgment; . . .
>
> (5) In the case of excessive or inadequate damages, enter final judgment on the evidence for the amount of the proper damages, grant a new trial, or grant a new trial subject to additur or remittitur; . . .
>
> (7) In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence.
>
> In its order correcting error the court shall direct final judgment to be entered or shall correct the error without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair. If corrective relief is granted, the court shall specify the general reasons therefor. When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence.

T.R. 59(J).

We generally review a trial court's ruling on a motion to correct error for an abuse of discretion. See, e.g., Speedway SuperAmerica, LLC v. Holmes, 885 N.E.2d 1265, 1270 (Ind. 2008); Walker, 943 N.E.2d at 351. In so doing, we afford the trial court's decision "a strong presumption of correctness." Walker, 943 N.E.2d at 351 (citing Weida v. Kegarise, 849 N.E.2d 1147, 1154 (Ind. 2006)). But where a trial court grants a new trial under Rule 59(J), it must provide findings of fact "sufficient to demonstrate why the jury verdict should be cast aside," id. at 350, and "[t]he strong presumption of correctness only arises if the court's decision is supported by the special findings required by Trial Rule 59(J)." Id. at 352 (citing Weida, 849 N.E.2d at 1154). Such findings demonstrate that when acting under Rule 59(J) as a "thirteenth juror" the trial court fulfills its duty to "sift and weigh the evidence and judge witness credibility." Ho v. Frye, 880 N.E.2d 1192, 1196 (Ind. 2008) (quoting Keith v. Mendus, 661 N.E.2d 26, 31 (Ind. Ct. App. 1996), trans. denied).

Where a new trial is granted because the jury's decision is "against the weight of the evidence," Rule 59(J) requires that the trial court's findings of fact "relate the supporting and opposing evidence to each issue upon which a new trial is granted." Keith, 661 N.E.2d at 32 (quoting T.R. 59(J)). Alternatively, "where the trial court grants a new trial on the basis that the decision of the jury is 'clearly erroneous as contrary to or not supported by the evidence' then the findings need only 'show why judgment was not entered upon the evidence.'" Id. (quoting T.R. 59(J); Wedmore v. Jordan Motors, Inc., 589 N.E.2d 1180, 1183 (Ind. Ct. App. 1992), trans. denied). See also Weida, 849 N.E.2d at 1151-52, 1153 (explaining the difference in the trial court's obligations under each scenario, the reasons the court must relate supporting and opposing evidence when acting as a "thirteenth juror," and recognizing this as a sober responsibility because "compliance with the arduous and time-consuming requirements of the Rule . . . provides assurance to the parties and the courts that the judge's evaluation of the evidence is better than the evaluation of the jury") (quoting Nissen Trampoline Co. v. Terre Haute First Nat'l Bank, 358 N.E.2d 974, 978 (Ind. 1976).

C.    *Analysis of the Order*

The trial court's order granting a new trial spanned nine pages and included twelve specific points of litigation history, five general findings of fact which within them included

8

twenty specific factual findings based on particular evidence presented at trial, and nine detailed conclusions of law. Among these were:

5. Joseph Pryor confessed to robbing and killing Mr. Santelli and was sentenced to 85 years in prison for these crimes.

13. The evidence presented at trial was sufficient to establish the foreseeability of a criminal assault on a guest in his motel room. That evidence included, but was not limited to, the following: . . . [listing four specific facts].

14. There was significant evidence of Defendant's failure to protect motel guests, including Mr. Santelli, from the foreseeable risk of violent criminal activity, including but not limited to the following: . . . [listing eleven specific facts].

15. The evidence was sufficient to support the jury's conclusion that the negligent acts and omissions of Defendant, Rahmatullah, were a substantial factor in the death of James Santelli, which evidence included, but was not limited to the following: . . . [listing five specific facts].

17. The exact mode of entry into the motel room by Mr. Pryor was not conclusively proven by the evidence. Several theories were introduced as to how entry was achieved. The only evidence at trial that supported an allocation of fault to James Santelli was the allegation that Mr. Santelli may have voluntarily opened the door to his room when the murderer entered. Since there were no eyewitnesses, no evidence was presented as to the exact exchange between Mr. Santelli and Mr. Pryor at the moment Pryor entered the motel room. Evidence was presented that the murderer was in possession of a working pass key to the room that had been provided to him by the Defendant, Rahmatullah, which gave him the ability to enter the room even if it had been locked.

22. Defendant Rahmatullah breached his duty of care to Santelli when defendant's motel hired Pryor, gave him a master key card, allowed him to leave employment with the key card after approximately two days, allowed him to return, failed to take measures to prevent further use of the key card, failed to conduct a criminal background check, failed to monitor the visible security cameras, failed to staff the hotel with trained security personnel, allowed outside doors to frequently remain unlocked or propped open and unmonitored at night despite stated policies that they be kept locked, and failed to maintain the lock system in order to save money resulting in inoperable locks; all despite defendant's knowledge that the motel was in a high crime area and had been the site of substantial prior criminal activity.

23. Defendant Rahmatullah's breach of care was a substantial factor in Mr. Santelli's death, as he afforded the murderer, Pryor, an opportunity to access Santell[i]'s room, where he killed Santelli.

9

25. The jury's allocation of 97% fault to the non-party, Pryor, apparently indicated the jurors' confusion while weighing Pryor's conduct, as compared to Rahmatullah's conduct, in addition to allocating fault between the parties and at the same interpreting and applying the jury instruction given to them on proximate/responsible cause.

App. at 260-67.

The trial court gave the following reasons for granting the motion to correct error: (1) "[t]he jury's allocation of fault was against the weight of the evidence"; and (2) "the jury's verdict was clearly erroneous[,] contrary to[,] and not supported by the evidence." App. at 265. At the end of its order, the court reiterated:

> [T]he Court grants the Motion to Correct Error on the issue of the allocation of fault percentages and finds that the allocation of 97% fault to the criminal, and only 2% fault to the negligent Defendant, is contrary to the weight of the evidence, for all of the reasons set forth above. . . . The verdict's fault allocation between the Plaintiff, Defendant and non-party, Pryor, was against the weight of the evidence.

Id. at 267. Although the trial court at one point uses the language "clearly erroneous[,] contrary to[,] and not supported by the evidence" it is clear from its multiple pronouncements about weighing the evidence that the court was acting as a thirteenth juror and determined the jury's decision to be against the weight of the evidence. The court was thus bound under Trial Rule 59(J) to "relate the supporting and opposing evidence to each issue upon which a new trial is granted." Here, the court provided extensive findings and conclusions relating in detail the supporting and opposing evidence bearing on the issue of fault allocation. The order demonstrates that the trial court "sift[ed] and weigh[ed] the evidence and judge[d] witness credibility" thus satisfying the provisions of Rule 59(J). Keith, 661 N.E.2d at 31. Its decision to grant a new trial is therefore entitled to a strong presumption of correctness on appeal. See Walker, 943 N.E.2d at 351. We find the trial court was well within its discretion in determining that "a contrary result should have been reached in the minds of reasonable men." Weida, 849

N.E.2d at 1152 n.4 (quoting Huff v. Travelers Indem. Co., 363 N.E.2d 985, 994 (Ind. 1977)). The trial court's order granting a new trial is affirmed.[3]

Although the trial court agreed with the Estate's contention that the jury's allocation of fault was against the weight of the evidence, it summarily denied the remainder of the Estate's motion, including the trial court's alleged errors of (1) permitting the jury to allocate fault to Pryor; (2) rejecting the Estate's tendered instruction which "would have informed the jurors that they could find [Rahmatullah] liable" for Pryor's criminal act if a death caused by crime was reasonably foreseeable; and (3) excluding evidence of a prior criminal shootout at the motel. See App. at 190, 259. The Estate maintains this was error. Again we apply an abuse of discretion standard on review, which requires that we reverse the trial court's judgment only if it was "clearly against the logic and effect of the facts and circumstances before it" or if the trial court "err[ed] on a matter of law." See Perkinson v. Perkinson, 989 N.E.2d 758, 761 (Ind. 2013).

We affirm the trial court's order insofar as it found no error in its decision to exclude evidence of the shootout. Appellate courts are reluctant to disturb the trial court's exercise of discretion, particularly where the question of admissibility of evidence is a close one. See TRW Vehicle Safety Systems, Inc. v. Moore, 936 N.E.2d 201, 218 (Ind. 2010) (recognizing the "considerable latitude" given to trial judges in making evidentiary determinations, particularly in the context of "lengthy, complicated, and vigorously contested trial and pre-trial proceedings"). We now address the Estate's remaining contentions and how our Comparative Fault Act applies to them.[4]

## II.

### Allocation of Fault for Intentional Acts and the Comparative Fault Act

The Estate's two remaining contentions are distilled from a more general argument that the law should not allow apportionment of responsibility to an intentional tortfeasor or criminal

---

[3] Rahmatullah argues only that the trial court's order was deemed denied. In the extensive briefing, he never contests the content of the order.

[4] The Estate does not appeal the trial court's denial of admission of evidence of employee criminal histories.

actor when the negligent defendant's "very duty" was to exercise reasonable care to protect the plaintiff from the specific risk of an intentional tort or criminal act.  See Br. of Appellant at 8-9; Restatement (Third) of Torts: Apportionment of Liability § 14 cmt. b (2000).  The Estate, amicus, and at least one commentator have characterized this concept the "very duty doctrine" or the "very duty rule."  See Br. of Appellant at 8; Br. of Amicus Curiae the Indiana Trial Lawyers Association at 2; Ellen M. Bublick, Upside Down?  Terrorists, Proprietors, and Civil Responsibility for Crime Prevention in the Post-9/11 Tort-Reform World, 41 Loy. L.A.L. Rev. 1483, 1487 (2008).  And the Estate frames the issue on appeal as whether "the Indiana Comparative Fault Act abrogate[s] the common law 'very duty' doctrine."  Br. of Appellant at 1.  Our research reveals no reference to the Estate's assertion as a "doctrine" or a "rule" outside a very narrow band of scholarship, so we will discuss it more generally as an argument against allocating fault to intentional actors where another, negligent actor owed a duty to the victim such as Rahmatullah owed Santelli.

The view highlighted here is that "comparisons 'between an actor charged with negligence and an actor charged with intentional misconduct'" can be "'impossible in theory.'" Bublick, Upside Down, supra at 1530 (quoting Geoffrey C. Hazard, Jr., Foreword to Restatement (Third) of Torts: Apportionment of Liability at xi-xiii (Proposed Final Draft (Revised) 1999)). Indeed, there has been much academic discussion on this very topic, with many commentators advocating against comparing these types of "fault" because they are so different from one another.  See generally, e.g., Ellen M. Bublick, The End Game of Tort Reform: Comparative Apportionment and Intentional Torts, 78 Notre Dame L. Rev. 355 (2003);  William Westerbeke, The Application of Comparative Responsibility to Intentional Tortfeasors and Immune Parties, 10 Kan. J.L. & Pub. Pol'y 189 (2000); J. Tayler Fox, Can Apples Be Compared to Oranges?  A Policy-Based Approach for Deciding Whether Intentional Torts Should Be Included in Comparative Fault Analysis, 43 Val. U.L. Rev. 261 (2008).  For this reason, some courts and legislatures refuse to permit apportionment of fault among negligent and intentional tortfeasors, reasoning that it is unfair to allow "[n]egligent tortfeasors . . .  to reduce their fault by the intentional fault of another that they had a duty to prevent."  Kan. State Bank & Trust Co. v. Specialized Transp. Servs., Inc., 819 P.2d 587, 606 (Kan. 1991).  See also, e.g., Merrill Crossings Assocs. v. McDonald, 705 So. 2d 560, 562 (Fla. 1997) (agreeing that language in Florida's comparative fault statute "gives effect to a public policy that negligent tortfeasors such

as in the instant case should not be permitted to reduce their liability by shifting it to another tortfeasor whose intentional criminal conduct was a foreseeable result of their negligence") (citations omitted); Ali v. Fisher, 145 S.W.3d 557, 564 (Tenn. 2004) (recognizing that a rare departure from the allocation of fault required under the comparative fault system is justified so that "negligent tortfeasors cannot seek to have their fault compared to that of intentional tortfeasors where the intentional conduct is the foreseeable risk created by the negligent tortfeasor") (internal quotation omitted).  And Indiana has recognized that similar reasoning underlies the doctrine of negligence per se.  See Rubin v. Johnson, 550 N.E.2d 324, 332-33 (Ind. Ct. App. 1990), trans. denied (rejecting defendant gun merchant's argument that criminal act of gun buyer was intervening cause of plaintiff's death eliminating merchant's liability, noting that criminal use of the gun sold by merchant to murderer was "the very risk sought to be avoided . . . [by the statute restricting gun sales and] . . . cannot stand as a bar to recovery").[5]  But as even the proponents of this reasoning have recognized, "an emerging minority of states" permit comparison of negligent acts and intentional acts.  Fox, supra, at 274-75.  Indiana is one of those states.  Id. at 275 n.78.

Indiana's Comparative Fault Act was first enacted in 1985 as Indiana Code sections 34-4-33-1 to -12 and is currently codified at Indiana Code sections 34-51-2-1 through -19.  See Control Techniques, Inc. v. Johnson, 762 N.E.2d 104, 107 (Ind. 2002).  Today the Act provides in pertinent part:

> The jury shall determine the percentage of fault of the claimant, of the defendants, and of any person who is a nonparty. . . .  In assessing percentage of fault, the jury shall consider the fault of all persons who caused or contributed to cause the alleged injury, death, or damage to property, tangible or intangible, regardless of whether the person was or could have been named as a party. . . .

---

[5] The Estate relies heavily on Rubin and another case, Sauders v. Cnty. of Steuben, 693 N.E.2d 16 (Ind. 1998) in support of its assertion that Indiana has previously "adopted" the "very duty doctrine."  We disagree.  Rubin merely invoked the reasoning the Estate attempts to invoke here in a different context — that of negligence per se.  Also, in Rubin the question arose on summary judgment and involved only whether the criminal act *barred* a negligent tortfeasor's liability.  Sauders involved a claim under the Indiana Tort Claims Act and there we expressly observed "the Comparative Fault statute does not apply."  Sauders, 693 N.E.2d at 17.

13

Ind. Code § 34-51-2-8(b)(1).  The definition of "fault" under this section of the Act was amended in 1995 to include:

> [A]ny act or omission that is negligent, willful, wanton, reckless, or *intentional* toward the person or property of others.  The term also includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages.

I.C. § 34-6-2-45(b) (emphasis added).[6]  Thus, the Act now mandates that when determining how to assign percentages of fault, a jury must consider the intentional acts of non-parties like Pryor in addition to the negligent acts of defendants like Rahmatullah.  We thus find that the trial court did not err in permitting the jury to allocate fault to Pryor and in refusing the Estate's tendered instruction that would have permitted the jury to hold Rahmatullah liable for Pryor's intentional act.

In addition to contending generally that fault should not be allocated to intentional actors, the Estate presents a slightly different alternative argument.  Specifically, the Estate and amicus curiae the Indiana Trial Lawyers Association assert that Indiana law permits the joint and several liability of intentional and negligent tortfeasors in the circumstances presented here and that Indiana should therefore adopt the following rule:

> A person who is liable to another based on a failure to protect the other from the specific risk of an intentional tort is jointly and severally liable for the share of comparative responsibility assigned to the intentional tortfeasor in addition to the share of comparative responsibility assigned to the person.

Br. of Appellant at 25 (quoting Restatement (Third) of Torts: Apportionment of Liability § 14 (2000)).

In support of its argument the Estate asserts "[t]he Comparative Fault Act neither expressly, nor by implication, requires the elimination of joint and several liability in all

---

[6] Prior to the amendment, the definition of fault included "any act or omission that is negligent, willful, wanton, or reckless toward the person or property of the actor or others, but *does not include an intentional act*."  I.C. § 34-4-33-2(a) (1988) (emphasis added).

circumstances." Appellant's Br. in Resp. to Trans. at 11 (citing Control Techniques, 762 N.E.2d at 110-112 (Dickson, J., dissenting)). But this Court has recently declared "the [Comparative Fault] Act abrogates the old rule of joint and several liability in suits to which the Act applies." Ind. Dept. of Ins. v. Everhart, 960 N.E.2d 129, 138 (Ind. 2012). We determined that the elimination of joint and several liability was a reasonable trade-off for the benefits plaintiffs receive under the Act, namely: the removal of the contributory negligence bar to recovery. See id. Further, under the Comparative Fault Act, "there is no right of contribution among tortfeasors." I.C. § 34-51-2-12. It would be incongruous to permit Rahmatullah to be held jointly liable for damages caused by Pryor but not to permit Rahmatullah to seek contribution from Pryor. Our view on this issue is consistent with that of other states whose legislatures, like the Indiana Legislature, have included intentional acts in the comparative fault analysis. See, e.g., Pederson v. Barnes, 139 P.3d 552, 559-60 (Alaska 2006) (observing Alaska's comparative fault act includes intentional torts and requires entry of judgment on the basis of "several" liability only); Rausch v. Pocatello Lumber Co., 14 P.3d 1074, 1081-82 (Idaho Ct. App. 2000) (recognizing Idaho legislature's express limitations on joint and several liability in a comparative fault statute that requires comparison of all "responsibility", including intentional torts); Hansen v. Scott, 645 N.W.2d 223, 229 (N.D. 2002) (observing that under North Dakota's comparative fault act "a negligent tortfeasor's conduct is compared with an intentional tortfeasor's conduct, and absent 'in concert' action, liability is several, not joint"). The Indiana legislature has the authority to expressly permit joint and several liability in circumstances such as these, but as of yet it has not done so. Cf. Everhart, 960 N.E.2d at 138 (recognizing "the historical rule of joint and several liability would appear to still apply to medical malpractice suits," "[b]ecause the Act expressly exempted medical malpractice claims from its ambit").

This is not to say that in Indiana it would be improper for a jury to allocate a greater percentage of fault to a negligent landowner than to an intentional tortfeasor. Indeed, we have previously upheld such an allocation in circumstances similar to those in the case before us, recognizing that the jury could have determined that "the opportunity for the [crime] would not even have existed had the [landowner] not failed to restrict [the intentional actor] from entering [the premises] or had it taken appropriate action to prevent or stop the attack . . . ." Paragon Family Rest. v. Bartolini, 799 N.E.2d 1048, 1056 (Ind. 2003). In allocating fault among multiple actors, a jury may consider "'the relative degree of causation attributable among the responsible

actors.'  Our statutory scheme thus allows a diverse array of factors to be considered in the allocation of comparative fault."  Green v. Ford Motor Co., 942 N.E.2d 791, 794-95 (Ind. 2011) (quoting Paragon, 799 N.E.2d at 1056).  The outcome of this consideration may at times be a conclusion that "the causative role" of the landowner exceeded "the relative degree of intentionality" of the intentional tortfeasor.  Paragon, 799 N.E.2d at 1056.

## Conclusion

We affirm the judgment of the trial court.

Dickson, C.J., David, Massa and Rush, JJ., concur.