

IN THE

# Court of Appeals of Indiana

Mitchell Schultz,

*Appellant-Plaintiff*

v.

S.P. Real Estate LLC,

*Appellee-Defendant*



FILED

Dec 22 2025, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

December 22, 2025

Court of Appeals Case No.
25A-CT-165

Appeal from the Jasper Circuit Court

The Honorable John D. Potter, Senior Judge
The Honorable Emily S. Waddle, Judge

Trial Court Cause No.
37C01-2005-CT-340

**Opinion by Judge Weissmann**
Judges Bailey and Brown concur.

**Weissmann, Judge.**

[1] After thousands of golf balls from a neighboring driving range landed on Mitchell Schultz's property, the trial court found the range liable for trespass. But because Schultz acquired his property knowing that golf balls regularly landed on it, the court assigned him 95% fault, meaning he could not recover damages. Schultz appeals, arguing that comparative fault does not reduce liability for intentional torts and, therefore, the trial court erred. We agree. Liability for an intentional tort turns on the tortfeasor's deliberate choice to commit the act. That intent cannot be reduced to a percentage of fault. We reverse and remand.

## Facts

[2] S.P. Real Estate LLC operates a driving range and golf course named Sandy Pines Golf Club (Sandy Pines) in Wheatfield, Indiana. The golf course has been open for decades, but an adjacent driving range was added in 2018 on land sold to Sandy Pines by Schultz's brother. The Schultz family has owned the property next to Sandy Pines for over 50 years. Schultz grew up on the property and eventually moved away. But he returned around 2008 to care for his aging mother.

[3] As soon as the driving range opened, thousands of golf balls began to rain down on the Schultz property—around 1,500 per year. The golf balls have broken windows on the Schultz family home, fallen into its swimming pool, and

otherwise caused property damage. Schultz began parking his car at the far end of the driveway and sitting under a tent when in the backyard to avoid falling golf balls. Schultz repeatedly complained to Sandy Pines. In response, Sandy Pines began using lower-flight range balls, instructed golfers to not hit golf balls over the net bordering the range, and told golfers to refrain from using the tee boxes closest to the Schultz property. Still, golf balls continued to land regularly on the Schultz property.

[4] On the advice of an attorney, Schultz's mother transferred title to the property to Schultz in 2020 so it would be clear he had standing to sue. He then filed a complaint against Sandy Pines which alleged: (1) the driving range was negligently designed; (2) the golf balls landing on his property constituted a nuisance; and (3) the golf balls constituted a trespass. Sandy Pines responded with a counterclaim alleging Schultz had trespassed on its property and harassed its patrons. Sandy Pines also argued it was exempt from liability because its operations complied with plans approved by the local zoning board.

[5] Sandy Pines then moved for summary judgment on Schultz's claims, which the trial court granted as to negligent design and nuisance. The court applied the doctrine of "coming to the nuisance" to bar Schultz's nuisance claim, finding he took title to the family property with knowledge that golf balls landed on it. App. Vol. II, p. 65. However, the court determined that this doctrine did not apply to the intentional tort of trespass. Accordingly, Schultz's trespass claim survived summary judgment.

[6] After a bench trial on the remaining issues, the trial court rejected Sandy Pines's counterclaims and found that the thousands of golf balls landing on Schultz's property constituted a trespass. The court then held a separate hearing on comparative fault, after which it assigned 95% fault to Schultz and 5% fault to Sandy Pines. The court found that Schultz incurred the risk of trespass by taking title to the property with knowledge of the golf ball issue. Schultz appeals the court's comparative fault determination.

## Discussion and Decision

[7] According to Sandy Pines, the Indiana Comparative Fault Act applies to intentional conduct and thus must be read to apply to intentional torts. Schultz agrees that the Act generally applies to intentional torts but claims that the comparative fault analysis described therein cannot be used to allocate fault for intentional torts like trespass. He relies solely on *Coffman v. Rohrman*, 811 N.E.2d 868, 872 (Ind. Ct. App. 2004), and *Becker v. Fisher,* 852 N.E.2d 46, 49 (Ind. Ct. App. 2006).

[8] In *Coffman*, this Court found that the Comparative Fault Act applies to intentional torts. However, it concluded that, "[i]n the case of intentional torts, the Act does not affect a defendant's *liability* but operates to decrease the amount of *damages* a plaintiff recovers if he has not appropriately mitigated his damages." 811 N.E.2d at 872-73 (emphasis in original). And in *Becker*, this Court reiterated: "[A] plaintiff in an intentional tort case may not be assigned a

percentage of liability," and "an intentional tortfeasor remains 100 percent liable for the tort." 852 N.E.2d at 49.

[9] On the surface, *Coffman* and *Becker* seemingly settle the issue. But an examination of their conclusion—that comparative fault does not reduce liability in intentional torts—reveals that the principle entered our jurisprudence without analysis.[1] Because this case presents a question of law, we apply a de novo standard of review. *See Beach v. Spiech, Tr. of Dauby Fam. Tr.*, 208 N.E.3d 619, 623 (Ind. Ct. App. 2023).

## I.  Comparative Fault and Intentional Torts

[10] Trespass is an intentional tort. *See Garner v. Kovalak*, 817 N.E.2d 311, 313-14 (Ind. Ct. App. 2004). Intentional torts are qualitatively different from torts based in negligence. Negligence requires proof of three elements: "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff resulting from the defendant's breach." *Munster Med. Rsch. Found., Inc. v. Hintz*, 222 N.E.3d 950, 955 (Ind. Ct. App. 2023) (quoting *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004)). The duty "never changes," but "the standard of conduct required to measure up to [it] varies depending upon the particular circumstances." *Carter v. Ind. Power & Light Co.*, 837 N.E.2d 509, 515

---

[1] This Court requested supplemental briefing on whether the approach to intentional torts in *Coffman* and *Becker* is supported by existing Indiana law. However, the parties' submissions did not fully address the question presented. Schultz largely reiterated the holdings of the two cases without closely examining the rationale. And Sandy Pines rehashed the facts of this case while also repeating the Comparative Fault Act's definition of "fault" and citing various out-of-state cases.

(Ind. Ct. App. 2005). Thus, the standard of care can be breached in different ways and to varying degrees. In contrast, intentional torts look solely to whether the defendant committed a certain prohibited act with specific intent, which does not change in degree or under different circumstances. *See, e.g.*, *Neal v. Cure*, 937 N.E.2d 1227, 1236 (Ind. Ct. App. 2010) ("To demonstrate trespass, a plaintiff must prove he was in possession of land and the defendant entered the land without right.").

[11] Another important distinction between these two types of torts lies in the relationship between the defendant's conduct and the resulting harm. In negligent torts, the tortfeasor's conduct (failure to exercise reasonable care) and the injury that it causes are two distinct elements. In other words, merely failing to exercise reasonable care is not the completed tort—that conduct must cause some injury. This distinction does not exist in intentional torts; an intentional tortfeasor's conduct itself constitutes the injury. For instance, the unauthorized entry onto land is itself the invasion of property rights that constitutes the intentional tort of trespass.

[12] Indiana courts have also long recognized the difference in moral culpability between negligent and intentional acts. *See Kimberlin v. DeLong*, 637 N.E.2d 121, 126 (Ind. 1994) (noting that liability for intentional torts extends beyond merely foreseeable harms because "it is better for unexpected losses to fall upon the intentional wrongdoer than upon the innocent victim"). A victim's conduct does not affect whether a defendant deliberately chose to commit an intentional

tort. Shifting liability to the victim would allow intentional tortfeasors to evade responsibility for their deliberate choices by pointing to a victim's vulnerabilities or circumstances.

[13] Both *Coffman* and *Becker* state that a plaintiff in an intentional tort case cannot be allocated fault, though the plaintiff's damages can be reduced based on a failure to mitigate damages. But in coming to this conclusion, the Court in those cases relied only on a case grounded in negligence. *Coffman*, 811 N.E.2d at 872-73 (citing *Deible v. Poole*, 691 N.E.2d 1313, 1316 (Ind. Ct. App. 1998), *adopted by* 702 N.E.2d 1076 (Ind. 1999)); *Becker,* 852 N.E.2d at 49 (same).

[14] The tortfeasor in *Deible* admitted liability for negligently causing a car accident but argued that the victim failed to mitigate her damages because she sought excessive medical treatment after the collision. 691 N.E.2d at 1314. The jury found the victim 100% at fault based on the victim's failure to mitigate damages. *Id.* In an opinion summarily adopted by our Supreme Court on transfer, this Court reversed and held that "[m]itigation of damages is not a defense to the ultimate issue of liability." *Id.* at 1316. Rather, it is a "defense to the amount of damages a plaintiff is entitled to recover *after* the defendant has been found to have caused the tort." *Id.* (emphasis in original). Though *Deible* concerned negligence and not intentional torts, the case demonstrates that the allocation of fault is a process distinct from the mitigation of damages.

[15] Sandy Pines does not quibble with the holding in *Deible* itself. It argues, however, that the Comparative Fault Act places intentional torts within the

fault-allocation framework, pointing to the Act's definition of "fault." For purposes of the Act, "fault" is defined as "any act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others" and includes "unreasonable assumption of risk" and "unreasonable failure to avoid an injury or to mitigate damages." Ind. Code § 34-6-2.1-68(b). Sandy Pines presumes that the use of the word "intentional" in this definition makes the comparative fault analysis applicable to intentional torts. But that reading is incompatible with the operation of the statute and broader tort principles.

[16] The Comparative Fault Act's core operative provisions—Ind. Code §§ 34-51-2-5 and -6—confirm that its system is built around "relative degrees of causation attributable among the responsible actors." *Santelli v. Rahmatullah*, 993 N.E.2d 167, 179 (Ind. 2013). Section 5 reduces a claimant's damages "in proportion to the claimant's contributory fault," and Section 6 bars recovery if the claimant's fault "is greater than the fault of all persons" who contributed to the injury. Both provisions presuppose that the factfinder can assign percentages of blame along a shared continuum of behavior that caused a harm or injury.

[17] Intentional torts do not fit that model. Liability for an intentional tort turns on a single question: whether the tortfeasor intentionally committed the wrongful act. Intentional conduct cannot meaningfully be parsed into percentage terms— there is no such thing as acting 20% intentionally. Additionally, because an intentional tortfeasor's conduct itself wholly constitutes the injury, this leaves

no others (besides joint intentional tortfeasors) to contribute to the harm.[2] Because the Act works by measuring degrees of fault of persons causing an injury, its fault-allocation provisions are conceptually incompatible with the nature of intentional torts.

[18]    Therefore, the conclusion reached in *Coffman* and *Becker*—that the comparative fault analysis does not apply to intentional torts—is grounded in sound logic. It also fits comfortably within the framework described in *Deible*. Comparative fault concerns who caused the injury and allocates responsibility among those whose conduct contributed to the harm. Mitigation of damages, by contrast, concerns the victim's conduct after the tort occurs and affects only the amount of damages the victim may recover, not liability for the tort itself. *Deible*, 691 N.E.2d at 1316. This means a victim's post-tort decisions—like failing to limit the extent of harm—may reduce damages, but those later choices do not reduce or shift liability for the tort. *See Becker*, 852 N.E.2d at 49.

[19]    To counter this interpretation, Sandy Pines points to *Santelli v. Rahmatullah* as supporting the application of comparative fault to intentional torts. 993 N.E.2d 167 (Ind. 2013). In *Santelli*, a man was shot and killed at a motel by a former maintenance worker of the motel. *Id.* at 169. The victim's estate sued the motel owner for negligence, claiming he failed to "maintain the motel in a reasonably

---

[2] In *Dallas v. Cessna*, this Court held that the Comparative Fault Act did not abrogate joint and several liability for intentional torts. 968 N.E.2d 291, 298 (Ind. Ct. App. 2012). Therefore, the two defendants who battered the victim were held jointly and severally liable for the resulting damages.

safe manner." *Id.* The motel-owner sought to allocate fault to the non-party murderer. Our Supreme Court held that "when determining how to assign percentages of fault [under the Comparative Fault Act], a jury must consider the intentional acts of non-parties . . . in addition to the negligent acts of defendants." *Id.* at 177. But *Santelli* does not apply to the instant case.

[20] First, *Santelli* is factually distinguishable. Critically, the underlying action in that case was a negligence claim, not an intentional tort. And the question presented was whether a negligent defendant could shift liability to a third-party intentional actor, when the negligent defendant's very duty was to protect the victim from the risk of intentional torts. It did not address the shifting of fault from the defendant liable for an intentional tort to the victim.

[21] Second, *Santelli* more broadly addressed *what* should be considered as part of the comparative fault analysis rather than *when* that analysis applies. The analysis undisputedly applied to the negligence claim at issue in *Santelli*. As the Court explained, Indiana is part of the "emerging minority of states [that] permit comparison of negligent acts to intentional acts" as part of the comparative fault analysis. *Id.* In other words, *Santelli* makes clear that, within the comparative fault analysis, negligent and intentional acts are both considered. But it does not answer the threshold question before us today— whether that analysis applies at all in cases of intentional torts.

[22] Concluding that the Comparative Fault Act does not reduce an intentional tortfeasor's liability, we now apply this principle to the facts of the instant case.

## II. Application to Schultz's Claim

[23] The trial court determined that Sandy Pines was liable for trespass. Although the court recognized that Schultz "correctly argue[d]" that comparative fault does not apply to intentional torts, the court nonetheless engaged in a comparative fault analysis and allocated 95% fault to Schultz because he incurred the risk of trespass by taking title to the property knowing that golf balls landed on it. App. Vol. II, p. 108.

[24] Once the trial court found Sandy Pines liable for the intentional tort of trespass, Sandy Pines should have remained 100% liable for the tort. *See Becker*, 852 N.E.2d at 49. The appropriate inquiry at that point was whether Schultz failed to mitigate his damages—an analysis distinct from the allocation of fault for causing the trespass.

[25] Sandy Pines claims the trial court's error was harmless, as the court "only applied the correct law in the wrong place." Appellee's Br., p. 12. According to Sandy Pines, the "outcome would be the same" had the court applied the law correctly. *Id.* But again, the allocation of fault is a process separate from the mitigation of damages. *Deible*, 691 N.E.2d at 1316. Mitigation of damages addresses a plaintiff's post-tort conduct, while the allocation of fault focuses on the plaintiff's conduct before the tort. *See Kocher v. Getz*, 824 N.E.2d 671, 674 (Ind. 2004). Because these inquiries examine two distinct time periods—pre-tort and post-tort—we cannot agree with Sandy Pines that the outcome was unaffected by the trial court's error.

Because Sandy Pines was found liable for the intentional tort of trespass, it could not reduce its liability through comparative fault. Schultz's damages can only be reduced based on his failure to mitigate his damages. As the court did not hear evidence or argument on Schultz's damages or mitigation thereof, those inquiries should be addressed on remand. We therefore reverse and remand for subsequent proceedings.

## III. Sandy Pines Waived Its Cross-Appeal

In its Appellee's Brief, Sandy Pines challenges the court's liability determination. It argues the court erred by failing to find the individuals hitting the golf balls on the driving range—rather than the range owner—were the trespassers, and by failing to treat Sandy Pines's compliance with zoning-board approval as a shield to liability. These arguments form a cross-appeal, and Sandy Pines therefore bears the burden of presenting a record adequate for appellate review. *See Cook v. Beeman*, 150 N.E.3d 643, 647 (Ind. Ct. App. 2020). Sandy Pines fails in its burden.

Though the record contains the court's order on liability, it does not include the transcript or the exhibits admitted at the liability hearing.[3] The only evidentiary materials in the appendix are the summary-judgment designations, and nothing indicates they were offered or admitted at the liability trial. Sandy Pines's

---

[3] An order following the liability trial shows that witness testimony was presented and numerous exhibits were admitted at trial. *See* App. Vol. II, p. 94 (noting that "Plaintiff's Exhibit Nos. 1 through 7 are admitted" and "Defendant's Exhibits A through U and X through DD are admitted").

arguments—that the evidence failed to show it caused the trespass and that it acted within zoning-board authority—are grounded in the evidence that was presented at the liability trial. That evidence is not in our record, and Sandy Pines has not presented any alternative documentation as to what occurred at that proceeding. *See* Ind. Appellate Rule 31 (permitting verified statement of evidence as alternative to transcript). The only transcript in the record is from the separate hearing on comparative fault, at which the parties presented legal argument, not evidence. And that hearing did not address the underlying issue of liability for the trespass.

[29] As the cross-appellant, Sandy Pines had the "duty to present an adequate record on appeal." *Cook*, 150 N.E.3d at 647 (quoting *Rausch v. Reinhold*, 716 N.E.2d 993, 1002 (Ind. Ct. App. 1999)). "[W]hen the appellant fails to do so, he is deemed to have waived any alleged error based upon the missing material." *Id.* Given Sandy Pines's failure to provide an adequate record for our review of its claims, we dismiss Sandy Pines's cross-appeal.

## Conclusion

[30] We dismiss Sandy Pines's cross-appeal. As to Schultz's claim on comparative fault, we reaffirm that in cases of intentional torts, the plaintiff cannot be allocated fault, and the defendant remains 100% liable for the intentional tort. This approach is consistent with Indiana's Comparative Fault Act and body of tort law. Therefore, the trial court erred by applying comparative fault to reduce

Sandy Pines's liability for the intentional tort of trespass. We reverse and remand for proceedings consistent with this opinion.

Bailey, J., and Brown, J., concur.

ATTORNEY FOR APPELLANT

Jacob A. Ahler
The Law Office of Riley and Ahler, P.C.
Rensselaer, Indiana

ATTORNEYS FOR APPELLEE

Donald W. Shelmon
Thomas C. Gutwein
Law Offices of Donald W. Shelmon
Rensselaer, Indiana