### In the Matter of the ADOPTION OF a Minor Child, Z.D.

#### No. 79A04–0704–CV–198.

Court of Appeals of Indiana.

Dec. 28, 2007.

Rehearing Denied Feb. 28, 2008.

Caroline B. Briggs, Lafayette, IN, Attorney for Appellant.

Sean M. Persin, Thomas N. Logan, Withered Burns & Persin, LLP, Lafayette, IN, Attorneys for Appellee.

### OPINION

MATHIAS, Judge.

Karen Dawson ("Dawson") filed a petition to adopt her grandchild, Z.D., in Benton Circuit Court. Before her petition was adjudicated, the Tippecanoe Circuit Court granted Z.D.'s foster parent's adoption petition. Dawson then filed a motion to correct error and a petition to intervene in the Tippecanoe Circuit Court, but her motions were denied. Dawson appeals and argues that the Benton Circuit Court had exclusive jurisdiction over the adoption of Z.D., and therefore, the Tippecanoe Circuit Court's decree of adoption is void. We affirm.

### Facts and Procedural History

In 2004, a petition alleging that Z.D. was a child in need of services ("CHINS") was filed in Tippecanoe Superior Court. Z.D. was removed from her parents and placed

with a foster parent on December 12, 2004. Dawson, who is Z.D.'s paternal grandmother, filed a motion to intervene in the CHINS proceeding, and the subsequent termination of parental rights proceeding, but her motions were denied. On November 28, 2005, the parental rights of Z.D.'s parents were terminated.

The next day, Dawson filed a petition to adopt Z.D. in Benton Circuit Court, the county in which Dawson resides. Notice of the petition was served on the Tippecanoe County Department of Family and Children ("the TCDFC"). On December 30, 2005, the TCDFC moved to intervene and to dismiss Dawson's adoption petition. The Benton County Department of Child Services also filed a motion to dismiss on January 4, 2006. On January 24, 2006, Z.D.'s foster parent filed a petition to adopt Z.D in Tippecanoe Circuit Court. Neither Dawson nor the Benton Circuit Court were notified of the foster parent's adoption petition.

The Benton Circuit Court set a hearing on the motions to dismiss Dawson's petition for April 5, 2006. The TCDFC moved to continue the hearing due to scheduling conflicts, and the court re-set the hearing for April 18, 2006. On April 14, 2006, the Tippecanoe Circuit Court held a hearing on the foster parent's petition and granted the foster parent's petition to adopt Z.D. When Dawson appeared in Benton Circuit Court for the April 18, 2006 hearing on the motions to dismiss, counsel for the TCDFC told her that the Tippecanoe Circuit Court had granted the foster parent's adoption petition.

On May 15, 2006, Dawson filed a motion to correct error and a motion to intervene in the foster parent's adoption proceeding in Tippecanoe Circuit Court. Several hearings were set on Dawson's motions, but the hearings were all continued. On September 11, 2006, the parties notified the court that they were attempting to reach an agreement. Dawson took no further action until she filed a "Request for Hearing on Petition for Adoption" on December 5, 2006. The court denied her request for a hearing. On February 20, 2007, the court found that Dawson's motion to correct error was deemed denied by operation of Trial Rule 53.3.

On December 15, 2006, the Benton Circuit Court dismissed Dawson's petition stating, "an adoption has been finalized in Tippecanoe County and exceptions or errors in those proceedings, if any, should be resolved before this Court accepts or resumes jurisdiction with potentially conflicting results between two Trial Courts." Appellant's App. p. 74. Dawson now appeals from both the Benton Circuit Court's dismissal of her adoption petition and the Tippecanoe Circuit Court's denial of her motion to correct error and motion to intervene. Additional facts will be provided as necessary.

**Discussion and Decision**

■ Dawson argues that the Benton Circuit Court had exclusive jurisdiction over Z.D.'s adoption because her petition was filed before the foster parent's petition in Tippecanoe Circuit Court. Moreover, she notes that the TCDFC had notice of her petition, and that the Tippecanoe Circuit Court was aware that Dawson's petition was pending in Benton Circuit Court before the Tippecanoe Circuit Court issued its adoption decree.

■ In general, "[w]hen an action is pending before a court of competent jurisdiction, other courts must defer to that court's extant authority over the case." *In re Infant Girl W.*, 845 N.E.2d 229, 238 (Ind.Ct.App.2006), *trans. denied* (citation omitted). "Courts observe this deference in the interest of fairness to litigants, comity between and among the courts of this

state, and judicial efficiency." *Id.* This principle is implemented through Indiana Trial Rule 12(B)(8), which permits "dismissal of an action on the ground that the same action is pending in another Indiana court." *Id.*

Dawson did not have the opportunity to file a Trial Rule 12(B)(8) motion to dismiss as she had no notice of the competing adoption petition in Tippecanoe Circuit Court.[1] Because she had no notice of the petition, Dawson did not waive the right to raise the defense. However, under the unique circumstances of this case which are discussed below, we cannot conclude that the Tippecanoe Circuit Court was required to divest itself of jurisdiction and render its decree of adoption void because Dawson's petition to adopt Z.D. was pending in Benton County. To conclude that the Tippecanoe Circuit Court's adoption order is void would run counter to the interests of judicial efficiency and the State's "strong interest in providing [a] stable home[ ]" for Z.D. *See In re Adoption of J.B.S.*, 843 N.E.2d 975, 977 (Ind.Ct. App.2006) ("[E]arly, permanent placement of children with adoptive families furthers the interests of both the child and the State.").

> Indiana Code section 31–19–2–2 provides that adoption petitions may be filed with the clerk of the court having probate jurisdiction in the county in which:
>
> 1) the petitioner for adoption resides;
>
> 2) a licensed child placing agency or governmental agency having custody of the child is located; or
>
> 3) the child resides.

Furthermore, subsection (b) of section 31–19–2–2 states: "The county in which the petition for adoption may be filed is a matter of venue and not jurisdiction." Therefore, venue over Z.D.'s adoption was technically appropriate in either Benton or Tippecanoe Counties. Dawson resides in Benton County, the TCDFC has custody of Z.D. and Z.D resides in Tippecanoe County.

Indiana Trial Rule 75(A) contains ten subsections, each setting forth criteria establishing "preferred" venue. None of these subsections precisely addresses the circumstances presented in this case. Yet, pursuant to Rule 75(A)(1), preferred venue lies in "the county where the greater percentage of individual defendants included in the complaint resides[.]" Although there are no "defendants" named in a petition for adoption, both Z.D. and the TCDFC are located in Tippecanoe County. Moreover, the CHINS and termination of parental rights proceedings occurred in Tippecanoe Superior Court. All legal proceedings concerning the care and custody of Z.D. have taken place in Tippecanoe County.

Indiana Code section 31–19–2–2 describes where venue is proper for adoption petition proceedings, but does not provide where venue is preferred. Although Dawson was permitted to file her petition to adopt in her county of residence pursuant to Indiana Code section 31–19–2–2, for the reasons discussed above, we conclude that under Trial Rule 75(A), preferred venue was in Tippecanoe County. *See Ritchie v. State*, 809 N.E.2d 258, 268 (Ind.2004) ("In

---

**1.** The TCDFC argues that Dawson had notice of the competing adoption petition. In its reply to Dawson's response to the motion to dismiss, the TCDFC stated that it "has consented to the adoption of this child by an adoptive placement other than" Dawson. Appellant's App. p. 36. Contrary to the TCDFC's assertion, this statement did not specifically notify Dawson that Z.D.'s foster parent had filed an adoption petition in Tippecanoe County.

general, if a statute conflicts with a validly adopted Trial Rule, the rule prevails.").

Yet, we are sympathetic to Dawson's argument concerning the TCDFC's and Tippecanoe Circuit Court's failure to provide her with notice of the adoption proceeding pending in that court. Prior to 2003, courts were required to give notice of adoption proceedings " 'and the opportunity to file objection to parents, putative fathers, other necessary parties, and interested parties that the court in the court's discretion directs.' " *In re Adoption of I.K.E.W.*, 724 N.E.2d 245, 250 (Ind.Ct.App. 2000) (quoting Ind.Code § 31–19–4–10 (repealed by P.L. 61–2003)). Dawson would have been entitled to notice of Z.D.'s foster parent's adoption petition under the prior statute. *See id.* However, section 31–19–4–10 was repealed in 2003.

The failure of the Tippecanoe Circuit Court[2] and the TCDFC to provide notice to Dawson of the competing adoption petition has the effect of undermining both Dawson's and the public's confidence in the judiciary. Yet, there is no longer any law which would require that Dawson be provided with notice of a competing adoption petition. Therefore, while we are sympathetic to Dawson's claim that she should have been served with notice of the competing adoption petition, we cannot conclude that either the trial court or the TCDFC was required to provide her with notice.

Moreover, the parental rights of Z.D.'s father were terminated before the commencement of Dawson's adoption proceedings. Because Z.D.'s father's rights were terminated, any of Dawson's "derivative due process rights with respect to visitation, custody, or adoption were effectively extinguished by the time" she filed her

petition. *See I.K.E.W.*, 724 N.E.2d at 249 n. 6. It is also well-settled that "noncustodial grandparents are not entitled to intervene in adoption proceedings" and " 'relatives have no preferential legal right to adopt' in Indiana." *Id.* at 249, 249 n. 6 (citations omitted). After the termination, on the day she filed her petition for adoption and thereafter, Dawson had neither standing to petition to adopt in the Benton Circuit Court nor to intervene in the Tippecanoe Circuit Court adoption proceedings.

Furthermore, the TCDFC refused to consent to the adoption of Z.D. by Dawson. "[A] petition to adopt a child who is less than eighteen (18) years of age may be granted only if written consent to adoption has been executed by ... [e]ach person, agency, or county office of family and children having lawful custody of the child whose adoption is being sought." Ind. Code § 31–19–9–1 (1998). However, if the county office of family and children refuses to consent to the adoption, the probate court must determine whether it is acting in the best interests of the child in withholding its consent. Ind.Code § 31–19–9–8(a)(10) (1998 & Supp.2007); *see also Infant Girl W.*, 845 N.E.2d at 240 (If the probate court concludes that the Office of Family and Children's reasons for refusal to consent are not in the best interests of the child, then its consent is not necessary.).

From the record before us, it appears that the TCDFC was acting in Z.D.'s best interests when it refused to consent to the adoption of Z.D. by Dawson. Dawson's son and Z.D.'s father is a convicted child molester whose parental rights have been terminated, yet Dawson indicated that she

---

**2.** In its final report to the Tippecanoe Circuit Court concerning Z.D.'s foster parent's adoption petition, the TCDFC informed the court of Dawson's pending adoption petition in Benton Circuit Court. Appellant's App. p. 93.

would allow her son to maintain contact with Z.D. Appellant's App. pp. 43–44, 47. For this reason, the Benton County Department of Child Services also opposed Dawson's petition to adopt Z.D. Appellant's App. p. 51.

We find further support for our conclusion in the following well-settled principles of Indiana law. Grandparent visitation rights survive the adoption of the child by a stepparent or a "person who is biologically related to the child as" a grandparent, a sibling, an aunt or uncle, or a niece or nephew. Ind.Code § 31–17–5–9 (1998). However, "[i]f a person not included in this list adopts a grandchild, the grandparent no longer has a right to seek visitation." *In re Guardianship of J.E.M.*, 870 N.E.2d 517, 521 (Ind.Ct.App.2007). Therefore, Dawson no longer has a right to seek visitation with Z.D.

For all of these reasons, we conclude that Dawson was not entitled to notice of Z.D.'s foster parent's adoption petition and the Tippecanoe Circuit Court properly denied Dawson's motion to correct error and motion to intervene. Furthermore, the Benton Circuit Court did not err when it dismissed Dawson's petition to adopt Z.D.

Affirmed.

NAJAM, J., and BRADFORD, J., concur.