


FILED

Sep 19 2025, 10:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

In re the Adoption of Au.S. and Am.S. (Minor Children),

M.Q. and N.G.,

*Appellants-Respondents*

v.

M.W. III and B.R.,

*Appellees-Petitioners*

---

September 19, 2025

Court of Appeals Case No.
25A-AD-1046

Appeal from the Kosciusko Superior Court

The Honorable Karin A. McGrath, Judge

Trial Court Cause Nos.
43D01-2501-AD-000002
43D01-2501-AD-000003

---

**Opinion by Judge Felix**
Judge Vaidik concurs.
Judge Tavitas concurs with separate opinion.

**Felix, Judge.**

## Statement of the Case

[1] Despite knowing about and taking part in ongoing custody proceedings instituted by M.Q. ("Grandmother") and her husband N.G. ("Step-Grandfather"), M.W. III ("Adoptive Father") and B.R. ("Adoptive Mother") filed petitions to adopt Au.S. and Am.S. (collectively, the "Children") without informing the adoption court of the pending custody matters. Nor did the Indiana Department of Child Services ("DCS") notify the adoption court of the custody proceedings, in which it had intervened. After the adoption court granted Adoptive Mother and Father's petitions to adopt the Children, Grandmother and Step-Grandfather (collectively, "Grandparents") filed motions to intervene and correct error, alleging the adoptions should be set aside in light of the preexisting and still-pending custody cases. The adoption court denied both motions. Grandparents now appeal, raising two issues for our review:

1. Whether the adoption court abused its discretion by denying Grandparents' motions to intervene; and
2. Whether the adoption court abused its discretion by denying Grandparents' motions to correct error.

[2] Because we determine that Grandparents should have been allowed to intervene in the adoption proceedings pursuant to Indiana Trial Rule 24(B)(2), we reverse and remand with instructions for the adoption court to allow Grandparents' permissive intervention and to consider the motions to correct

error. In reaching this conclusion, we hold that when a jurisdictional priority problem arises in a proceeding concerning custody of a child, that jurisdictional priority problem presumptively qualifies as a potential ground for permissive intervention under Trial Rule 24(B)(2). Under these circumstances, permissive intervention should only be denied if the trial court finds that (1) the first-to-file petitioner has relinquished their interest in pursuing custody of the child, or (2) intervention is unnecessary because the child's placement with the second-to-file petitioner is clearly in the child's best interests. If neither finding is supported by the record, the circumstances are sufficiently extraordinary and unusual to permit intervention under Trial Rule 24(B)(2).

## Facts and Procedural History

In May 2022, the Indiana Department of Child Services ("DCS") removed Children[1] from their mother F.G. ("Mother") for numerous drug-related issues, and the Children were later adjudicated children in need of services ("CHINS") in Elkhart County.[2] For the next 22 months, the Children lived with Grandparents from June 2022 until April 2024;[3] on April 22, 2024, the Children were placed with Adoptive Mother and Father (collectively, "Adoptive Parents"). In May 2024, after DCS filed petitions in Elkhart County to

---

[1] Au.S. was born on February 18, 2015. Am.S. was born on May 13, 2022.

[2] Causes 20C01-2205-JC-000039 and 20C01-2205-JC-000043.

[3] It is unclear from the record in this case why DCS removed the Children from Grandparents' care and placed them with Adoptive Parents.

terminate the Children's parents' rights,[4] Mother and both Children's fathers relinquished their parental rights to the Children.

[4] Three months later, on August 15, Grandmother filed pro se petitions for custody of the Children in Elkhart County under Causes 20D06-2408-MI-00277 and 20D06-2408-MI-000278 (the "Custody Causes"). On September 23 and 24, DCS filed motions to intervene in the Custody Causes. The custody court granted DCS's motions and held a status hearing; both DCS and Adoptive Mother appeared at that hearing.[5] The custody court set the Custody Causes for an evidentiary hearing in late November. In the meantime, a settlement conference was held between DCS and Grandparents, and Step-Grandfather filed his appearance and joined in Grandmother's petitions. In early November, the evidentiary hearing was moved to February 28, 2025. At a status hearing on January 2, 2025, Adoptive Parents and the parties appeared, and the custody court confirmed the February 28 evidentiary hearing.

[5] Instead of waiting for the evidentiary hearing in the custody court, on January 21, Adoptive Parents filed petitions to adopt the Children in Kosciusko County under Causes 43D01-2501-AD-000002 and 43D01-2501-AD-000003 (the "Adoption Causes"). The petitions did not mention the Custody Causes and

---

[4] Causes 20D06-2401-JT-000002 and 20D06-2401-JT-000003.

[5] The parties have only provided us with the Chronological Case Summaries and Grandmother's petitions in the Custody Causes. We have taken judicial notice of the contents of the documents filed in the Custody Causes pursuant to Indiana Appellate Rule 27.

were not served on Grandparents. On January 30, DCS, without mentioning the Custody Causes, filed its consents to the Children's adoptions by Adoptive Parents along with other necessary documents in the Adoption Causes. DCS, now a party in the Custody Causes, did not serve Grandparents with their consents in the Adoption Causes. On February 26, two days before the evidentiary hearing in the Custody Causes, the adoption court held the final hearing in the Adoption Causes. During that final hearing, and before granting the adoption petitions, the adoption court asked, "Second thing I need to make sure that this adoption is in the best interests of these two children. DCS or CASA, anything you wanna share with me?" Tr. Vol. II at 8. Both DCS and the CASA remained silent about the Custody Causes. The trial court then proceeded to grant the Adoptive Parents' adoption petitions. That same day, DCS filed notices of adoption in the Custody Causes.

[6] On February 28 in the Custody Causes, the custody court held the evidentiary hearing and found that the Children had been adopted in the Adoption Causes. The custody court also noted in its order that Grandparents wanted the adoptions set aside. On March 27 in the Adoption Causes, Grandparents filed motions to intervene and correct error pursuant to Trial Rules 24(B) and 59, respectively. Grandparents advised the adoption court of the Custody Causes and DCS's and Adoptive Parents' involvement in those proceedings, and they requested the adoption court set aside the adoptions until the Custody Causes were decided.

On March 31, the adoption court denied Grandparents' motions without a hearing. Grandparents now appeal.

## Discussion and Decision

We review for an abuse of discretion both a trial court's ruling on a motion to intervene, *JPMorgan Chase Bank, N.A. v. Claybridge Homeowners Ass'n, Inc.*, 39 N.E.3d 666, 669 (Ind. 2015) (citing *E.N. Maisel & Assocs. v. Canden Corp.*, 398 N.E.2d 1366, 1367 (Ind. Ct. App. 1980); *Bryant v. Lake Cnty. Trust Co.*, 166 Ind. App. 92, 101, 334 N.E.2d 730, 735 (1975)), and on a motion to correct error, *Sims v. Pappas*, 73 N.E.3d 700, 705 (Ind. 2017) (quoting *Santelli v. Rahmatullah*, 993 N.E.2d 167, 173 (Ind. 2013)). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." *Sims*, 73 N.E.3d at 705 (quoting *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011)).

Before we reach Grandparents' arguments, we first address Adoptive Parents' contention that Grandparents' motions to intervene and correct error were untimely. Trial Rule 24 provides the parameters for filing a motion to intervene, and Trial Rule 59 provides the parameters for filing a motion to correct error. Trial Rule 24 does not expressly impose a deadline for filing a motion to intervene. Trial Rule 59 states that a motion to correct error "must be filed not later than thirty (30) days after the entry of a final judgment is noted in the chronological case summary." Ind. Trial Rule 59(C); *see also id.* 24(C) ("Intervention after trial or after judgment for purposes of a motion under Rule[

] 59 . . . may be allowed upon motion."). Here, the Decrees of Adoption were issued and noted in the Adoption Causes' chronological case summaries on February 26, 2025. Any motion to correct error regarding those decrees had to be filed on or before March 28, 2025. *See* T.R. 59(C). Grandparents filed their motions to intervene and correct error on March 27. Therefore, Grandparents' motions to correct error, and by extension their motions to intervene, were not untimely.

## 1. The Adoption Court Abused Its Discretion by Denying Grandparents' Trial Rule 24(B) Motions to Intervene

[10] Grandparents contend the adoption court abused its discretion by denying their motions to intervene in the Adoption Causes. Trial Rule 24(B) provides in relevant part as follows:

> (B) Permissive Intervention. Upon timely filing of his motion anyone may be permitted to intervene in an action:
>
> * * *
>
> (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

T.R. 24(B)(2).

[11] In addition to reviewing the adoption court's ruling on the motions for an abuse of discretion, we also take "all the facts alleged in the motion[s] as true."

*Claybridge*, 39 N.E.3d at 669 (citing *Canden*, 398 N.E.2d at 1367; *Bryant*, 166 Ind. App. at 101, 334 N.E.2d at 735); *see also In re J.B.*, 246 N.E.3d 819, 824 (Ind. Ct. App. 2024) (citing *In re Guardianship of Adducci*, 240 N.E.3d 708, 713 (Ind. Ct. App. 2024), *trans. denied sub nom. Ind. Fam. & Soc. Servs. Admin. v. Adducci*, 248 N.E.3d 1203 (Ind. 2024)). In their motions to intervene, Grandparents alleged in relevant part as follows:

> 1. [Grandparents] are husband and wife and have been married since 2016.
>
> 2. [Grandmother] is the maternal grandmother of [the Children], and [Step-Grandfather] is the step-grandfather.
>
> 3. [The Children] lived in [Grandparents'] home from June 2022 through April 2024.
>
> 4. On August 15, 2024, [Grandmother] filed in the Elkhart Superior Court No. 6 [the Custody Causes].
>
> * * *
>
> 7. [The Custody Causes] continue[] to be pending in the Elkhart Superior Court No. 6 even though this Court has taken action on the adoption case[s], which [were] filed herein, which filing[s were] unknown to the grandmother and step-grandfather until February 25, 2025.

Appellants' App. Vol. II at 62, 157. The trial court's only explanation for denying the motions to intervene was a citation to *In re Adoption of A.E.*, 191

N.E.3d 952, 957 (Ind. Ct. App. 2022), *trans. denied*, 208 N.E.3d 600 (Ind. 2023) (mem.).

[12] Grandparents first challenge the adoption court's denial of their motion to intervene based on its reliance on *A.E.*, 191 N.E.3d 952. In *A.E.*, after the children's parents' rights were terminated and the children were adopted by adoptive parents, the children's grandmother filed a Trial Rule 24(B)(2) motion to intervene and a motion to correct error, claiming that the trial court lacked jurisdiction to hear the adoptive parents' adoption petition. *Id.* at 954–55. Specifically, the grandmother alleged that she had filed an adoption petition in Harrison County several months before the adoptive parents filed their petition in Hamilton County, which meant she had a claim or defense and a question of law in common with the Hamilton County adoption action. *Id.* at 955. Another panel of this court determined that the grandmother lacked standing to intervene pursuant to Trial Rule 24(B)(2), and in reaching this conclusion, it cited to this court's decision in *In re Adoption of Z.D.*, 878 N.E.2d 495, 498 (Ind. Ct. App. 2007), *superseded by statute on other grounds as recognized by In re Adoption of E.S.J.*, 219 N.E.3d 780, 783 n.4 (Ind. Ct. App. 2023), which held in relevant part that "a grandmother had no standing to intervene where parental rights of parents had been terminated before the motion to intervene had been filed and grandmother did not have custody of the child." 191 N.E.3d at 957.

[13] For the reasons stated in Chief Justice Rush's dissent from the denial of transfer in *A.E.*, 208 N.E.3d at 601–02 (Rush, C.J., dissenting), we respectfully disagree with the *A.E.*, 191 N.E.3d 952, decision. As noted by Chief Justice Rush, the

*Z.D.* decision on which the *A.E.* decision relies does not mention Trial Rule 24(B) and it cites to authority concerning only Trial Rule 24(A), which governs intervention of right. *A.E.*, 208 N.E.3d at 601 (citing *Z.D.*, 878 N.E.2d at 498).

[14] While it may be true that "noncustodial grandparents are not *entitled* to intervene in adoption proceedings," *id.* (emphasis added) (quoting *Z.D.*, 878 N.E.2d at 498), the plain language of Trial Rule 24(B) does not require a party seeking permissive intervention thereunder to demonstrate any cognizable right; instead, the party need only show that (1) "a statute confers a conditional right to intervene," Ind. Trial Rule 24(B)(1), or (2) the party's "claim or defense and the main action have a question of law or fact in common," *id.* 24(B)(2). Furthermore, Trial Rule 24(B) does not require a party to establish standing in order to request permissive intervention. *A.E.*, 208 N.E.3d at 602 (Rush, C.J., dissenting).

[15] Here, because Grandparents stated in their Trial Rule 24(B) motion that they filed the custody petitions in another court of competent jurisdiction, they properly raised a claim or defense and a question of law in common with Adoptive Parents' adoption action. *See A.E.*, 208 N.E.3d at 602 (Rush, C.J., dissenting). To the extent the trial court's citation to *A.E.*, 191 N.E.3d 952, signified it was denying Grandparents' motion to intervene for lack of standing, denial on that basis, we respectfully believe, was erroneous. *See A.E.*, 208 N.E.3d at 602 (Rush, C.J., dissenting).

[16] Next, Grandparents argue that extraordinary and unusual circumstances support allowing them to intervene in the Adoption Causes even though the adoption court had already issued decrees of adoption. Although this type of "post-judgment intervention is 'disfavored,' it is appropriate under 'extraordinary and unusual circumstances,' including when 'the petitioner's rights cannot otherwise be protected.'" *A.E.*, 208 N.E.3d at 602 (Rush, C.J., dissenting) (quoting *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 816 (Ind. 2012)). Grandparents contend the following are extraordinary and unusual circumstances that make their post-judgment intervention in the Adoption Causes appropriate: (a) the Custody Causes had jurisdictional priority over the Adoption Causes, (b) DCS's and the Adoptive Parents' failure to timely notify Grandparents of the Adoption Causes prevented Grandparents from seeking grandparent visitation with the Children, (c) Elkhart County was the preferred venue for any causes concerning the Children, and (d) the orders accepting the Children's parents' voluntary relinquishments of parental rights were defective. As we will explain next, because Grandparents' first contention regarding jurisdictional priority is sufficiently extraordinary and unusual enough on its own to support permissive intervention, we do not address the other three contentions.

[17] It is "a very fundamental axiom of law . . . that courts of concurrent jurisdiction cannot exercise jurisdiction over the same subject at the same time." *State ex rel. Am. Fletcher Nat. Bank & Tr. Co. v. Daugherty*, 283 N.E.2d 526, 634 (Ind. 1972). When one such court "acquires jurisdiction of the subject matter and the

parties," that court "is vested with such jurisdiction to the exclusion of the other court until the final disposition of the case." *Id.* at 635. That is, "two courts of concurrent jurisdiction cannot deal with the same subject matter at the same time," *id.* (citing *State ex rel. Tuell v. Shelby Cir. Ct.*, 216 Ind. 231, 236, 23 N.E.2d 425 (1939)), so "[o]nce jurisdiction over the parties and the subject matter have been secured, it is retained to the exclusion of other courts of equal competence until the case is determined," *id.* (collecting cases). This principle applies when, as here, competing filings concerning the custody of a child are made in different courts.[6] *See id.* at 634–35; *A.E.*, 208 N.E.3d at 603 (Rush, C.J., dissenting) (citing *State ex. rel. Otten v. Henderson*, 953 N.E.2d 809, 814–15 (Ohio 2011)); Ind. Code § 31-19-11-2 ("If the child is a ward of . . . an agency; or . . . department; the court shall provide for the custody of the child in the adoption decree.").

[18] We must also consider, though, that the finality of an adoption decree "is desirable in order to prevent the emotional strain which would otherwise be imposed upon both the adoptive child and parents, making it difficult for a normal parent-child relationship to develop." *M.R. ex rel. Ratliff v. Meltzer*, 487 N.E.2d 836, 840 (Ind. Ct. App. 1986) (quoting *Risner v. Risner*, 243 Ind. 581,

---

[6] Importantly, to the extent this principle could apply to competing filings for adoption and to establish paternity, Indiana Code section 31-19-2-14(a) supersedes it: "If a petition for adoption and a paternity action are pending at the same time for a child sought to be adopted, the court in which the petition for adoption has been filed has exclusive jurisdiction over the child, and the paternity proceeding must be consolidated with the adoption proceeding." More importantly, in the context of adoption and paternity actions, our General Assembly has prevented the circumventing of preexisting paternity cases by later-filed adoption proceedings or vice versa, and it has declared by statute that one case ought to be brought into the other.

582 n.1, 189 N.E.2d 105, 106 n.1 (1963)).  But the interests of finality, compelling as they may be, "do not render moot or insignificant" the interests of a party who both first filed a petition for custody of the now-adopted children and maintains that her having custody is in the children's best interests.  *A.E.*, 208 N.E.3d at 603 (Rush, C.J., dissenting).  "To conclude otherwise undermines our collective effort to facilitate access to courts, renders our jurisdictional priority precedent optional, and impairs the integrity of our adoption system by perpetuating—even explicitly tolerating—uncertainty and gamesmanship among parties seeking" to have custody of the same children.  *Id.*  We cannot allow our judicial system to "be so easily manipulated when the stakes are so immensely high."  *Id.*

[19]   Considering the jurisdictional priority rule together with the strong interest in finality for adoption decrees, we adopt Chief Justice Rush's framework for addressing jurisdictional priority issues in cases where a party—such as a noncustodial grandparent—seeks post-judgment intervention in an already finalized adoption case pursuant to Trial Rule 24(B)(2):

> [A] jurisdictional priority problem presumptively qualifies as a potential ground for permissive intervention under Trial Rule 24(B)(2).  When this problem is raised after a trial court issues an adoption decree, the dispositive interest is . . . the assurance that the child's best interests were properly heard and evaluated before the court enters an adoption decree.  And this assurance can be secured by permitting intervention, which does not require disturbing the trial court's decision.

> . . . [T]rial courts should permit post-judgment intervention unless the record indicates either that (1) the first-to-file petitioner has relinquished their interest in pursuing [custody of the child], or (2) intervention is unnecessary because the child's placement with the second-to-file petitioner is clearly in the child's best interests. But when neither finding is supported by the record, the circumstances are sufficiently "extraordinary and unusual" to permit intervention under Rule 24(B)(2).

*A.E.*, 208 N.E.3d at 603 (Rush, C.J., dissenting).

[20] Applying this framework here demonstrates that the adoption court abused its discretion by denying Grandparents' post-judgment motions to intervene. There is no question that Grandparents instituted the Custody Causes months before the Adoptive Parents instituted the Adoption Causes, so the Elkhart County Court has jurisdictional priority to determine who will have custody of the Children. We also observe that the Children were adjudicated CHINS and their parents' parental rights were terminated in Elkhart County. The record further confirms that DCS, a necessary party to both the Custody and Adoption Causes, knew about the competing matters, yet there is no evidence that DCS ever notified the adoption court of the Custody Causes, and it only notified the custody court of the Adoption Causes after the adoptions were finalized. Similarly, Adoptive Parents, who were involved in the Custody Causes although they did not intervene or file appearances therein, did not notify either court of the competing cases. *See* I.C. § 31-19-2-6(a)(9) (requiring an adoption petition include "[a]dditional information . . . that is considered relevant to the proceedings"). Consequently, and by no fault of its own, the adoption court

issued the adoption decrees before the Children's best interests were properly heard and evaluated.

[21] DCS's and Adoptive Parents' failure to notify the adoption court of the Custody Causes and their corresponding failure to notify the custody court of the Adoption Causes until after the adoptions were finalized is not only vexing, but it is also damaging to the integrity of our trial courts, to say the least.[7] As the adoption court noted in this case, the Adoptive Parents' "failure to advise this Court of the pending custody action in [the Custody Causes] undermines the public's confidence in the judiciary and expends unnecessary judicial resources." Appellants' App. Vol. II at 7, 74, 100, 169.

[22] Adoptive Parents argue that although "DCS could have notified Grandparents of the adoption proceedings, [DCS was] under no duty to do so pursuant to Ind[iana] Code [section] 31-19-4.5-1.5." Appellees' Br. at 20. Pursuant to

---

[7] Just recently, this court decided *In re Visitation of J.R.H.*, -- N.E.3d --, 2025 WL 1776204, (Ind. Ct. App. 2025), *trans. not sought*, which is sadly similar to the case at bar. In *J.R.H.*, the adopted child's paternal grandfather and his fiancée had filed a petition for guardianship of the child in Harrison County, Indiana, and the child's maternal grandparents cross-petitioned for guardianship. *Id.* at *1. The parties were ordered to mediation, but before that mediation occurred, the maternal grandparents filed a petition to adopt the child in Scott County, Indiana; the adoption petition did not mention the pending guardianship case or the guardianship court's mediation order. *Id.* at *1–2. The maternal grandparents did not serve the paternal grandfather with the adoption petition or otherwise inform him of it. *Id.* at *2. After the maternal grandparents' adoption petition was granted, the paternal grandfather filed a petition for grandparent visitation. *Id.* The maternal grandparents contested that petition, arguing the paternal grandfather no longer had standing to pursue grandparent visitation. *Id.* at *4. This court determined that because the paternal grandfather filed the guardianship case first, he was entitled to rely on the jurisdictional priority rule to assume that legal responsibility for the child would be decided in that case. *Id.* at *7. Because the maternal grandparents' "chicanery" prevented the paternal grandfather from contesting the adoption or seeking grandparent visitation in that action, this court concluded that the maternal grandparents were "equitably estopped" from contesting his standing to petition for grandparent visitation. *Id.*

Indiana Code section 31-19-4.5-1.5, notice to a grandparent that would otherwise be required by Indiana Code section 31-19-2.5-3(a)(3)[8] is "not required if the child to be adopted has been placed in the care, custody, or control" of DCS. *Id.* § 31-19-4.5-1.5(2). Adoptive Parents are correct that the Indiana Code did not expressly require notice to Grandparents of the Adoption Causes. But how are our trial courts to be assured that their adoption decisions are in a child's best interests when, as here, the adoptive parents and DCS withhold crucial information, namely, the existence of other, preexisting proceedings concerning custody of the child to be adopted? We hold this information is the type of "[a]dditional information" that must be provided in an adoption petition pursuant to Indiana Code section 31-19-2-6(a)(9), and the Adoptive Parents had a statutory obligation to disclose the Custody Causes to the adoption court.[9] *Cf.* I.C. § 31-19-2-6(a)(8), (b) (requiring disclosure of ongoing child or medical support orders); *id.* § 31-17-2-26 (requiring disclosure of certain DCS involvement in petitions to establish or modify custody) ; *id.* § 29-3-2-7 (requiring disclosure of certain DCS involvement in petitions to

_____

[8] Generally, before an adoption petition is filed, notice must be given to a grandparent who "is the grandparent of a child sought to be adopted," has "an existing right to petition for visitation under IC 31-17-5," and has "a right to visitation that will not be terminated after the adoption under IC 31-17-5-9." Ind. Code § 31-19-4.5-1(3); *see id.* § 31-19-2.5-3 ("Except as provided in section 4 of this chapter, notice must be given to . . . a grandparent described in IC 31-19-4.5-1(3) of a child sought to be adopted . . . .").

[9] In her dissent in the denial of transfer from *A.E.*, Chief Justice Rush suggested that when a jurisdictional priority issue arises in proceedings concerning the custody of a child (such as the competing adoption petitions in *A.E.*, 191 N.E.3d 952, and the competing custody and adoption proceedings here) with an open CHINS case in either county, DCS, as a party in both cases, should have a duty to ensure the courts in these counties are aware of the competing cases. *A.E.*, 208 N.E.3d 603 (Rush, C.J., dissenting).

establish or modify guardianship); *id.* § 31-17-4-11 (requiring disclosure of certain DCS involvement in petitions to establish or modify parenting time).

[23] Next, Adoptive Parents contend Grandparents should have filed a motion to dismiss the Adoption Causes pursuant to Trial Rule 12(B)(8), which provides that a pleading may be dismissed if the same action is "pending in another state court of this state." If Adoptive Parents had given Grandparents adequate notice of the Adoption Causes, then we might have to agree. But by their own failure to notify Grandparents of the Adoption Causes, Adoptive Parents precluded Grandparents from challenging the adoptions under Trial Rule 12(B)(8). Their appellate argument on this front is thus inapposite and not well taken.

[24] Adoptive Parents also assert *without citation*[10] that "Grandparents' competing custody request looks to temporarily reestablish a family unit which has already been severed due to neglect or failure to properly care for the children." Appellees' Br. at 12. The record in this case does not contain any information about why the Children were removed from Grandparents and placed with Adoptive Parents. It was for the custody court to determine if Grandparents should have custody of the Children, and to the extent this was a determination for the adoption court, it should have been provided with any and all information regarding the circumstances of the Children's removal from

---

[10] All statements of fact in the Argument section of a party's brief must be supported by citations to the record. Ind. Appellate Rule 46(A)(8)(a).

Grandparents so that it could properly evaluate the Children's best interests. Adoptive Parents and DCS denied both courts that opportunity.

[25] When the adoption court denied Grandparents' motions to intervene—without holding a hearing and with its only explanation being a citation to *A.E.*, 191 N.E.3d 952—it had no basis to conclude either that (1) Grandparents relinquished their interest in pursuing custody of the Children, or (2) intervention was unnecessary because placement with Adoptive Parents was clearly in Child's best interests. The adoption court therefore abused its discretion by denying Grandparents' Trial Rule 24(B) motions to intervene in the Adoption Causes.

## 2. Remand Is Appropriate for the Trial Court to Address Grandparents' Motions to Correct Error

[26] Grandparents argue the adoption court abused its discretion by denying their motions to correct error. Because we have reversed the adoption court's denials of the motions to intervene, we reverse the adoption court's denials of the motions to correct error and remand for consideration of those motions. Our decision today does not and should not be read to reverse or vacate the adoption decrees. We pass no judgment on whether the adoption decrees should be disturbed. That will be for the adoption court to determine on remand.

## Conclusion

In sum, the adoption court abused its discretion by denying Grandparents' motions to intervene in the Adoption Causes, so we reverse those denials as well as the adoption court's denials of Grandparents' motions to correct error. We remand with instructions for the adoption court to grant Grandparents' motions for permissive intervention and to consider Grandparents' motions to correct error.

Reversed and remanded.

Vaidik, J., concurs.
Tavitas, J., concurs with separate opinion.

ATTORNEYS FOR APPELLANT

Nancy A. McCaslin
James L. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Katherine Ridenour
Andrew M. Goeglein
Burt, Blee, Dixon, Sutton & Bloom, LLP
Fort Wayne, Indiana

**Tavitas, Judge, concurring.**

[29] I fully concur in the majority opinion, but I write separately to discuss intervention as of right and emphasize that the gamesmanship demonstrated here crosses the line of zealous advocacy.

[30] Although Grandparents do not argue that they were entitled to intervention as of right pursuant to Indiana Trial Rule 24(A), in such cases, Trial Rule 24(A) protects parties when statutes and the trial rules do not provide for the scenarios present in this case. Generally, the intervenor as of right "must demonstrate that he has an interest in the subject of the action, that disposition in the action may as a practical matter impede protection of that interest, and that representation of the interest by existing parties is inadequate." *In re Paternity of E.M.*, 654 N.E.2d 890, 892 (Ind. Ct. App. 1995). Both actions here involved: (1) the custody of the Children; (2) the adoption of the Children by the Adoptive Parents as a practical matter impeded Grandparents' custody of the Children; and (3) Grandparents' interests were not represented in the adoption matter.[11] I, thus, conclude that Grandparents were entitled to intervention as of right.[12]

---

[11] The Children's best interests were at stake in both causes. The appointment of a guardian ad litem would have been appropriate to represent the Children's best interests.

[12] I also note that Indiana Trial Rule 19(A) requires joinder of an indispensable party.

[31] In other custody contexts, this Court has required intervention. *See, e.g.*, *Paternity of M.S.*, 146 N.E.3d 951, 960 (Ind. Ct. App. 2020) (holding that, given the third party's status as a de facto custodian, the trial court abused its discretion by denying her motion to intervene in a child custody modification proceeding in a paternity action where Indiana Code Section 31-14-13-2.5(c) provided: "If a court determines that a child is in the custody of a de facto custodian, the court shall make the de facto custodian a party to the proceeding."). We currently have different intervention statutes depending upon whether the proceeding involves a CHINS, termination of parental rights, dissolution, or paternity action, but those statutes are not implicated here. *See* Ind. Code § 31-34-21-3.4 (discussing intervention in a CHINS action by foster parents or kinship caregivers); Ind. Code § 31-32-2.5-1 (discussing intervention during a CHINS or termination of parental rights); Ind. Code § 31-17-2-8.5 (making a de facto custodian a party to custody proceedings); Ind. Code § 31-14-13-2.5 (making a de facto custodian a party to custody proceedings in paternity actions). Where there are competing custody actions not addressed by these statutes, however, the best way to address this delicate situation is to allow intervention as of right.[13]

---

[13] In a comparable case, where both a CHINS proceeding and a third-party custody proceeding were pending in separate courts, our Supreme Court held that an aunt and uncle had standing to file an independent third-party custody petition in a separate cause of action from the CHINS cause. *In re M.B.*, 51 N.E.3d 230, 236 (Ind. 2016). In such cases, the custody proceeding should be stayed pending the conclusion of the CHINS proceeding. *Id.*

[32] Further, I note that this case is the latest appeal involving child custody and improper gamesmanship. *See, e.g.*, *In re Paternity of G.S.*, --N.E.3d --, 2025 WL 2327337, *8 (Ind. Ct. App. 2025) (noting that the "litigation tactics Stepfather and Mother have engaged in are astounding and clearly were designed to delay resolution of the matter and force Father to expend substantial attorney fees"); *In re Visitation of J.R.H.*, -- N.E.3d --, 2025 WL 1776204 (Ind. Ct. App. 2025); *A.E.*, 208 N.E.3d at 603 (Rush, C.J., dissenting) (noting the "gamesmanship among parties seeking to adopt the same child"). This gamesmanship fails to prioritize the best interest of the child, and attorneys involved in such gamesmanship risk disciplinary action.

[33] Indiana Rule of Professional Conduct 3.3(a), which addresses candor toward the tribunal, provides:

> A lawyer shall not knowingly:
>
> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
>
> (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or [14]

---

[14] I would recommend an amendment to include the required disclosure of cases involving known interested parties.

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

Although the plain language of this rule does not require disclosure of a pending case with interested parties, if an attorney is required to disclose adverse legal authority, surely the attorney is required to inform the trial court of competing custody cases regarding the same child. Further, I note that it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice." Ind. Prof. Conduct R. 8.4(d).